**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William M. CONOVER and Anthony R. Tanner, Defendants–Appellants.**

**Nos. 84–3431, 84–3876.**

United States Court of Appeals, Eleventh Circuit.

May 16, 1988.

---

John A. DeVault, III, Timothy J. Corrigan, Jacksonville, Fla., and David R. Best, Orlando, Fla., for defendants-appellants.

Terry Zitek, Asst. U.S. Atty., Tampa, Fla., for U.S.

Before HILL and ANDERSON, Circuit Judge and GARZA *, Senior Circuit Judge.

GARZA, Senior Circuit Judge:

The Supreme Court has directed us to give further consideration to the felony convictions of William Conover and Anthony Tanner. In reviewing our opinion at 772 F.2d 765 (1985), the Court affirmed in part and remanded to us to determine whether the evidence presented at trial was sufficient to establish that Conover and Tanner conspired to cause Seminole to make misrepresentations to the REA. —— U.S. ——, 107 S.Ct. 2739, 2754, 97 L.Ed.2d 90 (1987). Because our review of the grand jury indictment, the Government's proof, and the jury instructions reveals

that the jury could not have found Conover and Tanner guilty based on the Government's alternate theory of conspiracy alleged in Paragraph 14 of Count One, we reverse the 18 U.S.C. § 371 convictions. Additionally, Conover's and Tanner's convictions for federal mail fraud under 18 U.S.C. § 1341 must be reversed in light of the Court's opinion in *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

## I. Proceedings

It has been nearly five years since Conover and Tanner were indicted. Their first trial ended with a hung jury and a mistrial. They were reindicted; the first count alleged a conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and the second through fifth counts alleged distinct acts of federal mail fraud in violation of 18 U.S.C. § 1341. While Conover was found guilty on all counts, Tanner also was found guilty on all counts except the third count. We affirmed each of the convictions. 772 F.2d 765 (1985).

The Supreme Court granted certiorari at 479 U.S. ——, 107 S.Ct. 397, 93 L.Ed.2d 351 (1986). The Court concluded that the phrase "to defraud the United States, or any agency thereof" in § 371 did not cover the status of Seminole Electric Cooperative, Inc. (Seminole). —— U.S. at ——, 107 S.Ct. at 2754. A conspiracy to defraud Seminole, a private corporation receiving financial assistance and minimal supervision from the United States Government is not itself a conspiracy "to defraud the United States." *Id.* However, the Court remanded the case because "the Government also charged petitioners with conspiring to manipulate Seminole in order to cause misrepresentations to be made to the REA [Rural Electrification Administration], an agency of the United States." *Id.* On remand, the Court has asked us to study the record to determine whether sufficient evidence exists to convict the defendants on the basis that they conspired

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

to cause Seminole to make misrepresentations to the REA.

## II. Paragraph 14 and the Alternate Theory of Conspiracy

 The question before us now is whether the conspiracy convictions can stand on the basis of the Government's alternate theory alleged in Paragraph 14 of Count One of the indictment. Paragraph 14 reads:

> It was further a part of the conspiracy that the defendants would and did cause Seminole Electric to falsely state and represent to the Rural Electrification Administration that an REA-approved competitive bidding procedure had been followed in awarding the access road construction contracts.

The defendants have suggested that the convictions cannot stand because (1) there was no evidence to establish guilt on this theory, and (2) the jury was not instructed on this theory. The Government argues that the evidence shows that Conover and Tanner conspired to cause Seminole to make false representations to the REA regarding compliance with REA-approved bidding procedures on the fill and spreading contracts.

There is some evidence which indicates that Conover and Tanner caused Seminole to make misrepresentations to the REA concerning bidding procedures. For instance, an REA employee testified about REA's reliance on and approval of the contracts based on information submitted by Conover and Seminole. In addition, there is testimony that Conover and Seminole certified to the REA that the roads had been completed in accordance with the contracts, when in truth some of the fill materials did not meet specifications. It is evident that Conover and Tanner manipulated Seminole into making misrepresentations to the REA based on corrupt bidding procedures regarding both procurement processes.

However, we are mindful that just before the re-trial the Government dismissed Count Six which charged the defendants with essentially the same conduct as charged in Paragraph 14. We also have learned that the jury was not instructed covering Paragraph 14 of the § 371 conspiracy count. The Government's alternate theory of the substantive count that Conover and Tanner conspired to induce Seminole to make misrepresentations to the REA clearly must be rejected because (1) the Government dismissed Count Six, a nearly identical charge before the re-trial, thus showing its lack of proof or lack of foresight on this point, (2) the Government in fact failed to offer sufficient evidence on the alternate theory at trial, and (3) the Government even failed to receive or request a jury instruction on the alternate theory of conspiracy. Without sufficient evidence, without any showing that the Government proceeded on the alternate theory of conspiracy, and without an instruction to the jury on the alternate theory, the jury could not have based its verdict on that charge and thus the § 371 conspiracy convictions must be reversed. *See Screws v. United States*, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945).

## III. *McNally* and the Mail Fraud Convictions

 The Supreme Court also has asked us to consider the defendants' contention that the evidence did not establish a scheme to defraud Seminole under the federal mail fraud statute, 18 U.S.C. § 1341. In our earlier opinion we decided to pretermit discussion on this issue. We affirmed the mail fraud convictions on the basis that the evidence established the use of the mails in connection with the § 371 violation alleged in Count One. 772 F.2d at 771–72. But the Court has told us that this basis must fail.

Conover and Tanner recommend that we need not consider whether the evidence established a scheme to defraud Seminole because the Court's recent *McNally* opinion protects them from being convicted of the offense of mail fraud. In *McNally v. United States*, the Court held that "[t]he mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government."

—— U.S. ——, 107 S.Ct. at 2879. After a study of the statute's legislative history the Court ruled that § 1341 was not promulgated to protect intangible rights to honesty and fair dealing.

The indictment against Conover and Tanner failed to charge that Seminole was defrauded of money or property. The relevant portion of the indictment states:

### COUNT TWO

1. Beginning in or about January, 1980, and continuing to in or about January, 1982, at Tampa and Crystal River, in the Middle District of Florida and elsewhere,

### WILLIAM M. CONOVER

and

### ANTHONY R. TANNER,

defendants herein, knowingly devised and intended to devise a scheme and artifice to defraud:

(a) the United States by impeding, impairing, obstructing and defeating the lawful function of the Rural Electrification Administration in its administration and enforcement of its guaranteed loan program; and

(b) Seminole Electric Cooperative, Inc., of its right to have its process and procedures for the procurement of materials, equipment and services run honestly and free from deceit, corruption and fraud, and of its right to the honest and faithful services of its employees.

Although Seminole has been defrauded of "its right to the honest and faithful services of its employees," *McNally* teaches that this may not be sufficient to sustain a federal mail fraud conviction. In this novel approach the Court has thinned most circuits' broad readings of the mail fraud statute.

The Government alleged in *McNally* that a public official's kickback scheme to defraud involved political influence over governmental insurance business to the petitioners' insurance companies. —— U.S.

——, 107 S.Ct. at 2877. The Court recognized that § 1341 was not intended to protect the intangible right of the citizenry to have public officials perform their duties honorably. Further, the Court found nothing in the jury charge to allow the jury to find that the public was deprived of money or property. *Id.* at ——, 107 S.Ct. at 2882. The Court observed:

[T]here was no charge and the jury was not required to find that the Commonwealth itself was defrauded of any money or property. It was not charged that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance.... Although the Government now relies in part on the assertion that the petitioners obtained property by means of false representations ... there was nothing in the jury charge that required such a finding. We hold, therefore, that the jury instruction on the substantive mail fraud count permitted a conviction for conduct not within the reach of § 1341.

*Id.* The Court noticed that under existing law the jury could find that the petitioners had breached a fiduciary duty of failing to disclose their conflict of interest, thereby depriving the public of its right to a fair and honest government. The Court ultimately decided to vacate the *McNally* convictions because the right to honest and faithful service was an interest too ethereal in itself to fall within the purview of the federal mail fraud statute.

Similarly, Conover and Tanner urge that the indictment against them did not charge and the jury instructions did not require a finding that Seminole was defrauded of money or property. The relevant portion of the jury charge provides:

Counts Two through Five of the indictment contain allegations that defendant Conover intentionally breached his fiduciary duty to Seminole Electric Cooperative, Inc. and that defendant Tanner knowingly and willfully aided and abetted defendant Conover in the breach of this fiduciary duty.

The term "fiduciary duty" refers to the nature of the legal obligation which a

corporate officer or employee owes to his employer. Unless it is modified by specific agreement between the employer and the employee, an employee's fiduciary obligation under the law is to act honestly and faithfully in all of his dealings with his employer, including a duty to make a full and fair disclosure to the employer of any personal interest or profit which the employee expects to derive or has derived from any transaction in which he participates in the course of his employment.

A violation of the employee's duty to disclose material information to the employer can constitute an illegal scheme to defraud under the mail fraud statute only if there is evidence of some detriment to the employer.

Information is material in this sense whenever an employee has reason to believe the information would make a bargaining difference to the employer or lead a reasonable employer to change its business conduct and the duty to disclose is violated by either active concealment or affirmative misrepresentation and deception or by the receipt of so-called bribes or kickbacks.

A "bribe" is defined as the corrupt giving of a thing of value to another to improperly induce or influence that person's action. A "kickback" is defined as a payment to an individual for dealing in the course of his employment with the person making the payment with the result that his personal financial interest interferes with his duty to secure the most favorable bargain for his employer.

A lapse of a fiduciary duty owed by an employee to an employer does not in and of itself amount to a violation of the mail fraud statute. A breach of a fiduciary duty owed by an employee to an employer can only constitute a violation of the mail fraud statute if the government proves beyond a reasonable doubt that there is some detriment to the employer caused by such a breach of a fiduciary duty.

So, in this instance, if you find beyond a reasonable doubt that the defendant under consideration acted in the manner described in the indictment and that he breached a fiduciary duty he owed to his employer (or aided and abetted another defendant in so doing with the result that the employer was deprived of its employee's honest and faithful service and suffered detriment as described above); and if you further find that the defendant under consideration did such acts knowingly and willfully (as those terms are hereafter defined), then you may also find that such a deliberate breach of a fiduciary duty with resulting detriment constituted a "scheme to defraud" as to the alleged victim Seminole Electric Cooperative, Inc., as that term has been used in these instructions.

Conover and Tanner refer us to the language that the jury merely was instructed that it must find a "detriment" to Seminole. The only "detriment" articulated in the charge was the duty of an employee "to make a full and fair disclosure to the employer of any personal interest or profit which the employee expects to derive or has derived from any transaction in which he participates in the course of his employment." The Government responds with a reference to the jury charge which states that Conover breached a "fiduciary duty" to his employer, Seminole. The charge also discusses the meaning of the terms "bribe" and "kickback" as it relates to Conover's "fiduciary duty." The Government asserts that this instruction is the "functional equivalent of an instruction" requiring a finding that the scheme was calculated to deprive Seminole of money or property. *See United States v. Ballard,* 663 F.2d 534 (5th Cir.1981), *modified,* 680 F.2d 352 (5th Cir. Unit B 1982).

In *Ballard,* the Fifth Circuit stated in *dicta* that "in an unregulated market, the detriment necessary for a finding of mail fraud ... would be shown by mere receipt of kickbacks." 680 F.2d at 354 n. 5. Of course, *Ballard* preceded *McNally* which changed the law, holding that a mail fraud conviction cannot stand unless there is a charge and proof that the victim was defrauded of money or property. —— U.S. ——, 107 S.Ct. at 2882. In *McNally* the

defect was in the charge, and the Court did not address the sufficiency of the evidence. The *McNally* court observed that because the Government had failed to charge that "the Commonwealth would have paid a lower premium or secured better insurance," the conviction had to be reversed. *Id.*

On the basis of *McNally*, it is inferable that to sustain the convictions in this case, the Government would have to offer proof and the jury would have to be instructed that Seminole would have paid less for the road or received a higher quality road. These points were not brought out at the trial. There was some testimony that Seminole paid a slightly higher price for Tanner's sand filling. However, it is not evident in the indictment or in the charge that Seminole paid a higher price for the patrol road, or that the patrol road was constructed improperly. Additionally, there is no instruction providing that Conover's compromise of his company's interests caused losses of money or tangible property to Seminole.

Finally, we are not persuaded that *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), governs the outcome of this case. In *Carpenter*, the Court held that the petitioners' conspiracy to trade on the Wall Street Journal's confidential information was within the reach of the mail and wire fraud statutes. It was held that the Journal had a property right in keeping confidential and making exclusive use, prior to publication, of the schedule and contents of the particular columns. *Id.* at ——, 108 S.Ct. at 320. In the present case there was nothing to indicate that Conover maintained confidential business information or that Seminole had a property right in its procurement of the contracts.

This case is similar to that of *United States v. Italiano*, 837 F.2d 1480 (11th Cir. 1988). In *Italiano*, the indictment for § 1341 mail fraud did not charge a deprivation of money or property. The Government contended, however, that a mail fraud prosecution having bribery, as defined by state law, as its predicate was cognizable under the money or property requirement of *McNally*. This court decided that it did not need to confront the question that an agent is liable to his principal for any profits derived where the agent exploits a fiduciary relationship for his personal gain because the grand jury did not return its indictment on that theory. *Id.* at 1483–84.

In essence, this charge is not materially different from that rejected by the Court in *McNally* or this court in *Italiano*. The jury instruction allowed the jury to convict the defendants upon a finding either that the "detriment" to Seminole was the unfaithful service of Conover or the payment of a "bribe" or "kickback." *See Sandstrom v. Montana*, 442 U.S. 510, 526, 99 S.Ct. 2450, 2460, 61 L.Ed.2d 39 (1979). Because we cannot preceive that the jury convicted the defendants on the ground that they unlawfully deprived Seminole of money or tangible property, we are compelled to vacate the convictions.

## IV. Conclusion

Conover and Tanner have had good fortune shine on them. At the time they acted for their personal gain their actions were clearly unlawful. The law is an ever-changing body, however. The Government's attorneys cannot be blamed for proceeding as they did given the state of the law. The § 371 and § 1341 convictions are REVERSED and the judgments are VACATED.