**UNITED STATES of America,**

v.

**Lawrence I. GOODRICH.**

No. 86–387–Civ–T–15B.

United States District Court,
M.D. Florida,
Tampa Division.

June 13, 1988.

Fran Carpini, Tampa, Fla., for U.S.

Lee Fugate, Clearwater, Fla., for Goodrich.

## MEMORANDUM ORDER

CASTAGNA, District Judge.

### I.

Count III of the original indictment in this case charged the defendant with a violation of the federal mail fraud statute, 18 U.S.C. § 1341. That Count alleged that the defendant, an attorney who represented clients in zoning matters before the Hillsborough County Commission, had used the mails to defraud the citizens of Hillsborough County, Florida, of "the honest, true, faithful, unbiased, and disinterested services, decisions, and performance" of the Hillsborough County Commission and of the right to have the Commission's business affairs "conducted honestly and impartially and free from deceit, graft, corruption, fraud, undue influence, dishonesty and bribery[.]"

After the original indictment was handed up, the Supreme Court handed down *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that a scheme to defraud state citizens of their intangible rights to honest and impartial government did not constitute a mail fraud. 107 S.Ct. at 2881. Under *McNally*, a scheme to defraud runs afoul of the mail fraud statute only if it is devised to defraud the victim of money or property. *Id.* The *McNally* Court acknowledged that this holding ran contrary to a long-established line of cases from the lower federal courts. *Id.* — U.S. at —, 107 S.Ct. at 2880 (citing as examples *Unit-*

*ed States v. Clapps*, 732 F.2d 1148 (3d Cir.1984), and *United States v. States*, 488 F.2d 761 (8th Cir.1973)). But the *McNally* Court found its decision compelled by its construction of the language of the mail fraud statute. *Id.* at —, 107 S.Ct. at 2881. The Court based this statutory construction on the somewhat sparse legislative history to 18 U.S.C. § 1341. Two other sources also informed the Court's decision—the Doctrine of Lenity, which calls for the least harsh rational interpretation of criminal statutes, *id.* at —, 107 S.Ct. at 2881, and a federalism interest in keeping federal authorities from assuming the role of standardbearer of honesty and integrity for state and local governments, *id.*

The defendant moved to dismiss Count III of the original indictment on the authority of *McNally*. The government, in turn, obtained a superseding indictment. Count III of the superseding indictment again charges the defendant with mail fraud. But in place of the above-quoted language regarding the right to the honest and faithful services of the County Commission, Count III of the superseding indictment alleges that the defendant has defrauded the citizens and government of Hillsborough County of three types of property. In essence those properties are: First, the cost of conducting "sham" commission meetings; second, the value of bribes paid to individual commissioners (based on a constructive trust theory); third, the right to control zoning decisions. The defendant has moved to dismiss Count III of the superseding indictment, contending that that Count fails to allege a violation of the mail fraud statute because none of the three alleged objects of the scheme to defraud is in fact "property."[1] Each of the government's theories of "property" shall be considered in turn.

### II.

#### Cost of Sham Commission Meetings

The first property interest alleged by Count III of the superseding indictment to

---

1. The defendant also contends that the mailings alleged in the indictment were too tangentially related to the alleged scheme to defraud to support a conviction for mail fraud. However, this essentially fact-bound argument is premature.

*See United States v. Knox,* 396 U.S. 77, 83 & n. 7, 90 S.Ct. 363, 367 & n. 7, 24 L.Ed.2d 275 (1969) (issues of fact to be determined initially at trial); *cf.* Fed.R.Crim.P. 12(e) (court, for good cause, may defer ruling on motion until trial).

have been defrauded of the government and citizens of Hillsborough County is:

> the salaries, emoluments, and services of elected and appointed personnel of Hillsborough County, Florida, and the use of equipment of Hillsborough County, Florida, in the analysis, review, revision of planing and zoning records and consideration by the Board of County Commissioners and various departments and offices of Hillsborough County in regard to zoning petitions which were approved by the Board of County Commissioners because of payments of bribes in violation of Florida Statutes[.]

(Superseding indictment at 20). As noted, this portion of the indictment charges essentially that the various commission meetings at which zoning petitions were considered were a mere charade. The indictment does not allege, nor does the government in its briefs contend, that the purported mail fraud caused the county to incur any expenses over and above the cost of conducting regularly-scheduled commission business. Instead, the government contends that the commissioners' salaries were paid and incidental expenses were incurred in conducting sham meetings designed to reach a result foreordained by the payments of bribes.

This theory finds its strongest support (and perhaps its genesis) in Justice Stevens' dissenting comment that the *McNally* decision's property requirement should not stand in the way of the prosecution of corrupt officials since "[w]hen a person is being paid a salary for his loyal services, any breach of that loyalty would appear to carry with it some loss of money to the employer—who is not getting what he paid for." *McNally v. United States*, 107 S.Ct. at 2890 & n. 10 (Stevens, J., dissenting). Of course, Justice Stevens' remarks in dissent are just that—remarks in a dissent— and, in the absence of an endorsement from the *McNally* majority,[2] are entitled to only so much respect as they command by the force of their logic. At least in the case before this Court, Justice Stevens' comments carry little persuasive power.

■ The property interest alleged to have been denied the victim here—what the government contends Hillsborough County paid salaries for but did not get—is the "honest and faithful services" of the county commissioners, an interest the Supreme Court has characterized as "too ethereal in itself to fall within the protection of the mail fraud statute[.]" *Carpenter v. United States*, —— U.S. ——, ——, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987). Upon closer examination this argument is just the "intangible rights" theory by another name. Indeed, this case is not even distinguishable from *McNally* on this score, unless one assumes it was never brought out at *McNally's* trial that one of the co-defendants who had devised the scheme to defraud, Gray, was paid a salary by the Commonwealth of Kentucky. But such a reading of *McNally* would vitiate that decision of meaningful effect, save the anomalous case in which the scheming employee or public official was performing on a pro bono basis. Furthermore, nothing in *McNally* suggests that it could be distinguished on these grounds. *Compare McNally*, 107 S.Ct. at 2882 (taking note of factors not presented to the jury). This Court declines to give *McNally* such a narrow reading.

As was the case in *McNally*, additional problems are present here because the individuals alleged to have been bribed, the county commissioners, were governmental officials. A determination whether the commissioners failed to discharge their duties faithfully and honestly would require a determination whether the commissioners breached their sworn duties of office. Such a determination would necessarily involve the Court in "setting standards of disclosure and good government for local ... officials[.]"—the very evil the

---

**2.** Unfortunately, the *McNally* majority neither endorsed nor disputed Justice Stevens' remarks, thereby leaving the lower federal courts at sea as to the validity of Justice Stevens' contentions. Nor did the majority provide a framework for analyzing property interests. Indeed, the *McNally* decision, which found error in the jury charge, is of limited guidance to the courts (and to the government, for that matter) in determining the sufficiency of an indictment.

*McNally* Court sought to guard against.[3] *McNally v. United States,* 107 S.Ct. at 2881. Thus allegiance to the principles articulated in *McNally* requires that the government not be allowed to proceed on this theory.

### Constructive Trust of Bribe Money

The second property interest that the government alleges the defendant defrauded the people of Hillsborough of is:

> the value and proceeds of bribes paid to elected members of the Board of County Commissioners of Hillsborough County, Florida, to induce them to violate their duty to the government and citizens of Hillsborough, County, Florida, of conducting the business of Hillsborough County, Florida, honestly, impartially, and free from deceit, graft, corruption, fraud, undue influence, dishonesty, and bribery[.]

(Superseding indictment at 20–21). Thus the government argues that any bribes paid to the individual commissioners are in fact the property of the county. This theory, too, has its origins in Justice Stevens' *McNally* dissent. There, Justice Stevens suggested a way around the *McNally* holding:

> '[i]f an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its, value, or its proceeds, to the principal.' ... This duty may fulfill the [*McNally* majority's] 'money or property' requirement in most kickback schemes.

*McNally v. United States,* 107 S.Ct. at 2890 n. 10 (Stevens, J., dissenting) (quoting Restatement (Second) of Agency § 403 (1958)).

At least two of the Circuit Courts of Appeals have taken up this suggestion with alacrity. *See United States v. Runnels,* 833 F.2d 1183 (6th Cir.1987) (upholding mail fraud conviction even though constructive trust theory was not presented to the jury); *see also United States v. Richerson,* 833 F.2d 1147, 1156–58 (5th Cir.1987) (applying plain error doctrine); *United States v. Fagan,* 821 F.2d 1002, 1010 n. 6 (5th Cir.1987) (same); *but see United States v. Ochs,* 842 F.2d 515 (1st Cir.1988); *United States v. Holzer,* 840 F.2d 1343 (7th Cir.1988). The Eleventh Circuit Court of Appeals, however, has left the question open. *See United States v. Italiano,* 837 F.2d 1480, 1486 & 1487 n. 5 (11th Cir.1988); *accord United States v. Conover,* 845 F.2d 266, 270–271 (11th Cir.1988); *cf. United States v. Covino,* 837 F.2d 65, 72 n. 2 (2d Cir.1988) (refusing to speculate on theories not contained in the indictment). Accordingly, this Court considers the question afresh.

Under the law of constructive trusts, a fiduciary is liable to turn over to the principal any money or property received as a result of the breach of his duty of trust. *See generally* 5 Scott, *The Law of Trusts* (3d ed. 1967); *see also* The Restatement of Restitution § 160 (1937). As it relates to property in a mail fraud scheme, the constructive trust theory has its most appeal in "kickback" cases where an employee or agent accepts payments which result in a direct economic loss to the principal. For example, the cost of the kickback may be passed along to the principal in the form of increased costs for goods or services. *See, e.g., United States v.*

---

**3.** This Court recognizes that federalism concerns may be implicated whenever a state or local official is charged with mail fraud. The *McNally* Court adopted what it called the "common understanding" of the word defraud—"'wronging one in his property by dishonest methods[.]'" 107 S.Ct. at 2881 (quoting *Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)). Thus whenever a state or local official is charged with mail fraud, the courts will be called upon to set some standards of official honesty, whether the official is charged with defrauding the victim of money, property, or (somewhat redundantly) the right to honest government. But *McNally* did not immunize corrupt state and local officials from prosecution for mail fraud. Indeed, nothing in the language or history of the mail fraud statute would have supported such an interpretation. Accordingly, when Congress has, consistent with the Constitution, commanded the courts to inquire into the conduct of state and local officials, the courts must do so, despite the sometimes thorny issues raised by our federalism. *See generally* C. Wright, *The Law of Federal Courts* § 52A (4th ed. 1983).

*Fagan,* 821 F.2d 1002, 1009–1010 (5th Cir. 1987); *United States v. Perholtz,* 836 F.2d 554, 558 (D.C.Cir.1987). Or the principal may be prevented from charging a higher price for its own goods or services because an employee receiving payments is withholding that information. *See, e.g., United States v. Richerson,* 833 F.2d 1147, 1157 (5th Cir.1987); *compare United States v. Ballard,* 663 F.2d 534, 541 (5th Cir.1981), *modified,* 680 F.2d 352 (5th Cir. Unit B 1982) (no economic harm where price set by statute). In the wake of *McNally,* however, some courts have resorted to a constructive trust theory even where the payments to the perfidious employee or agent could not have resulted in demonstrable economic harm to the principal. *See United States v. Runnels,* 833 F.2d at 1186–88.

■ Whatever the validity of a constructive trust theory to "kickback" cases, it cannot apply to the bribery scheme before this Court. The fallacy of applying a constructive trust theory to a case such as this was laid open by Judge Posner, writing for a panel of the Seventh Circuit Court of Appeals in *United States v. Holzer,* 840 F.2d 1343 (7th Cir.1988); *see also United States v. Ochs,* 842 F.2d 515, 521–27 (1st Cir.1988). In *Holzer,* a state trial judge from Chicago had been convicted of, among other things, mail fraud. The indictment in *Holzer* accused the judge of taking bribes in a scheme to defraud the State of Illinois and its citizens of the right to honest administration of justice. The Seventh Circuit affirmed the conviction, *United States v. Holzer,* 816 F.2d 304 (7th Cir.1987), and the judge petitioned for certiorari. While this petition was pending, the Supreme Court decided *McNally.* The Supreme Court remanded *Holzer* for reconsideration in light of *McNally.* —— U.S. ——, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987). On remand, the same constructive trust argument

made here was presented to, and rejected by, the Seventh Circuit.

■ As Judge Posner observed in *Holzer,* constructive trusts are ordinarily impressed on property to ensure that the property is conveyed to its true owner. 840 F.2d at 1347. Bribes, on the other hand, are by definition illegal; they have no true owner, constructively or otherwise. Indeed, it is only through the barest of legal fictions that constructive trusts arise at all. *Holzer,* 840 F.2d at 1348; *see, e.g., Binz v. Helvetia Florida Enterprises,* 104 So.2d 124, 125, 126–27 (Fla. 3d DCA 1958). Where they do arise, the duty to relinquish property is imposed to prevent the constructive trustee from retaining his ill-gotten profit, *not* to enrich the constructive beneficiary. *Holzer,* 840 at 1348; *see, e.g., Bell v. Smith,* 159 Fla. 817, 32 So.2d 829, 832 (1947). The government has not come forward with any scenario in which the money allegedly paid to the individual commissioners as bribes could have legally found its way into the county coffers. After all, the Hillsborough County Commission (as opposed perhaps to some of its individual members) was no more in the business of selling zoning classifications than the State of Illinois was in the business of selling justice. *See Holzer,* 840 F.2d at 1348.

Thus the only lawful way for Hillsborough County to have recouped the bribe money is through a lawsuit based on a constructive trust theory.[4] But the indictment before this Court does not allege that the defendant devised a scheme to thwart Hillsborough County's attempts to recover the bribery proceeds through an equitable action in state court;[5] it alleges that the scheme was devised to alter zoning classifications. *See United States v. Goss,* 650 F.2d 1336, 1341 (5th Cir.1981) (mail fraud requires specific intent). It is perhaps a nice question whether the right to bring an

---

4. The government has not endeavored to show that a constructive trust is imposed on bribery proceeds as a matter of Florida law, which provides the controlling rule of decision. For purposes of resolving this issue, however, the Court will assume that such a trust could be imposed. *But see* 56 Fla.Jur.2d *Trusts* §§ 94–

103 (1985) (bribery not listed as special circumstance in which constructive trust arises).

5. Nothing in the record at hand suggests that Hillsborough County instituted such an action upon discovering the bribery payments.

equitable action to impose a constructive trust on bribery proceeds is itself a "property interest" within the meaning of the mail fraud statute. *Compare Holzer*, 840 F.2d at 1348–49, *with United States v. Ochs*, 842 F.2d 515, 526 (1st Cir.1988). But it is not a question before this Court. *See United States v. Italiano*, 837 F.2d 1480, 1486 (11th Cir.1988) (court must judge indictment on the theory presented to the grand jury). Accordingly, the government shall not be permitted to proceed on a constructive trust theory.

### Control Over Zoning Decisions

■ The final property interest that the government alleges the defendant denied the people and government of Hillsborough County is:

> control over the decision making process in regard to conferring the property right of regulating the density of residential property through amending the zoning of individual parcels of property thereby increasing the amount of residential units permitted on the parcel of property[.]

The *McNally* case does not provide a paradigm for analyzing property rights. But the case's reliance on *Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1986), suggests that insofar as the mail fraud statute is concerned property rights are to be defined broadly. *McNally*, 107 S.Ct. at 2879. And in a follow-up case to *McNally*, *Carpenter v. United States*, — U.S. —, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), the Court laid to rest the distinction between tangible and intangible property rights. In *Carpenter*, the Court found that confidential business information, which the Court apparently characterized as tantamount to a trade secret, *see* 108 S.Ct. at 320 (quoting 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1 (rev. ed. 1986)), was property protected by the mail fraud statute. Neither *Carpenter* nor *McNally*, however, answers the question posed here.

In another context, the Supreme Court has observed that "[p]roperty interests ... are not created by the Constitution."

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (fourteenth amendment due process inquiry). Nor would it appear, in light of *McNally*, that property interests are created by our federal criminal statutes. Instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Id.* The government has not shown that the right to control zoning decisions is a property interest under Florida law.

Instead, the government's argument is based on a non sequitur: The government points out that zoning decisions affect property. (Response to original motion to dismiss at 5.) The government also points out that arbitrary and capricious zoning decisions can constitute a deprivation of property without due process of law. (*Id.*) It does not follow, however, that zoning decisions are themselves property.

A similar infirmity underlies the government's contention that its analysis finds support in the *McNally* case itself. The government relies on the *McNally* majority's allusion that the case before it might have been different if the jury had been "charged that to convict it must find that the Commonwealth was deprived of control over how its money was spent." *McNally*, 107 S.Ct. at 2882. This language is dictum at best, and was meant to limit, not expand, the holding of *McNally*. Moreover, this language does not support the government's argument. The *McNally* Court acknowledged only that the loss of control over one's money could lead to the loss of money; it did not say that control over property in the abstract was itself a property interest.

A review of the applicable Florida law and of the cases following *McNally* convinces this Court that control over zoning decisions is not property, but a mere intangible right. Certainly the people of Hillsborough County have the right—a right which this Court does not mean to denigrate—to honest administration of its zoning codes, just as in *McNally* the people of Kentucky had the right to fair and impar-

tial government. But neither right is "property." And neither can be transmogrified into "property" by the government's mere incantation of that word. Thus neither right finds its remedy in our law proscribing mail fraud.

## III.

It risks understatement to observe that *McNally* came as a surprise to the legal community. *See, e.g., United States v. Piccolo,* 835 F.2d 517, 521 (3d Cir.1987) (Aldisert, J., dissenting) (*McNally* is "a blockbusting opinion"); *United States v. Slay,* 673 F.Supp. 336, 343 (E.D.Mo.1987) (*McNally* came as "a total surprise"). The case repudiated a unanimous line of lower court cases, and its result was not necessarily compelled by the mail fraud statute's language.

Thus *McNally* may be a bitter pill for federal law enforcement authorities to swallow in their quest to eradicate public corruption. But *McNally* is the law, and we must all adjust to it, judges and prosecutors alike. As Judge Bownes observed for the First Circuit in rejecting arguments identical to those presented by the government here:

> We understand that the intangible rights doctrine has become firmly entrenched in the federal courts and that old habits die hard. But we do not think courts are free simply to recharacterize every breach of fiduciary duty as a financial harm, and thereby to let in through the back door the very prosecution theory that the Supreme Court tossed out the front.

*United States v. Ochs,* 842 F.2d 515, 527 (1st Cir.1988).

It is unfortunate indeed if Justice Stevens' prognostication is accurate, and the worst abusers of the public trust benefit most from *McNally. McNally v. United States,* 107 S.Ct. at 2891 (Stevens, J., dissenting). But this Court is bound to honor *McNally,* its policy and its scope. The arguments advanced by the government, although they offer some superficial appeal, present no *principled* basis for distinguishing this case from *McNally.* Accordingly,

the mail fraud count in the indictment must be dismissed.

Based on the foregoing, it is

ORDERED:

That Count III of the superceding indictment is hereby dismissed.