UNITED STATES of America,
Plaintiff–Appellee,

v.

Bird LANCE, Jr., Defendant–Appellant.

No. 88–1019.

United States Court of Appeals,
Tenth Circuit.

June 7, 1988.

Charles Gaunce of Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Oklahoma City, Okl., for defendant-appellant.

Roger Hilfiger, U.S. Atty., Muskogee, Okl., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, McKAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Bird Lance, a former county commissioner, was indicted and convicted on charges that he defrauded county citizens of their intangible right to honest government by taking kickbacks in connection with county purchases in violation of the mail fraud statute, 18 U.S.C. § 1341 (1982). We affirmed his conviction in an unpublished order. *United States v. Lance*, No. 82–1843 (10th Cir. Feb. 29, 1984). He brought this action under 28 U.S.C. § 2255 (1982), asserting that his mail fraud convictions are invalid in light of the Supreme Court's decision in *McNally v. United States*, —— U.S.

——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The district court ruled that *McNally* should not be given retroactive effect in the context of a section 2255 proceeding, and denied relief.

We recently considered en banc the effect of *McNally* in collateral challenges to mail fraud convictions based on substantially similar schemes to defraud. *See United States v. Shelton*, 848 F.2d 1485 (10th Cir.1988) (consolidated with *United States v. James*). Our decision there is substantially dispositive of the issues raised in this appeal. For the reasons set out below, we reverse on the retroactivity issue, and we grant relief in part.[1]

I.

In *McNally*, the defendants were charged with committing mail fraud by participating in a scheme whereby they gave state insurance business to an insurance agency that agreed to split the resulting commissions with them. "The prosecution's principal theory of the case ... was that petitioners' participation in a self-dealing patronage scheme defrauded the citizens and government of Kentucky of certain 'intangible rights,' such as the right to have the Commonwealth's affairs conducted honestly." *McNally*, 107 S.Ct. at 2877. The Supreme Court observed that the case before it was one of a "line of decisions from the Courts of Appeals holding that the mail fraud statute proscribes schemes to defraud citizens of their intangible rights to honest and impartial government." *Id.* at 2879. The Court, however, construed the statute to reach only frauds involving money or property. *Id.* at 2881. Because the jury instructions in *McNally* permitted a guilty verdict based solely on loss of the right to honest government, and did not require the jury to find that the victims of the fraud had lost money or property, the Court reversed the convictions. In *Carpenter v. United States*, ——

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

U.S. ——, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987), the Court reiterated its holding that the right to "honest and faithful service [is] an interest too ethereal in itself to fall within the protection of the mail fraud statute."

Lance was charged with implementing his scheme to defraud county citizens in three ways: 1) by receiving kickbacks from suppliers from whom he purchased equipment for the county; 2) by engaging in "split deals" with suppliers, whereby he and a supplier billed the county for non-existent goods and split the purchase price; and 3) by receiving kickbacks from a supplier from whom he purchased county equipment through lease-purchase agreements. Lance's convictions became final before the Supreme Court decided *McNally*, and he did not raise the *McNally* issue at trial or in his direct appeal. Lance maintains that *McNally* invalidates his convictions, and that the district court erred in refusing to apply that decision retroactively.

## II.

■ In *Shelton*, we concluded that *McNally* applies retroactively in a section 2255 proceeding. *Shelton*, at 1490. Further, in considering the cause and prejudice standard applied in *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982), to defaulted claims raised in a section 2255 motion, we concluded that a federal habeas petitioner has cause for failing to raise the *McNally* issue earlier. *Shelton*, at 1490. Those holdings are equally applicable here.

We also considered in *Shelton* whether the defendants there had established actual prejudice resulting from the erroneous theory of mail fraud underlying their convictions. In so doing, we examined the indictment, the instructions, and the evidence at trial in light of the ruling of *McNally*. Our analysis there resolves some of the issues presented in this appeal and aids in our consideration of others.

Lance was convicted on sixty counts of mail fraud,[2] which can be divided into two groups for purposes of assessing the validity of his convictions: counts that allege split deals,[3] and counts that allege only kickbacks.[4]

### A.  Split Deal Counts

■ We begin, as we did in *Shelton*, with the sufficiency of the indictment. Count one of the indictment provides:

"1.  During the period commencing on or about July 8, 1971, and continuing thereafter to on or about March 2, 1981, BIRD LANCE, JR., the defendant herein, while serving as County Commissioner of Murray County, Oklahoma, devised and intended to devise a scheme to defraud the citizens of Murray County by depriving the citizens of that County of their right to have Murray County's business conducted openly, honestly, and impartially, free from corruption and undue influence.

"The scheme to defraud the citizens of Murray County was in substance as follows:

"2.  As part of the scheme to defraud, BIRD *LANCE*, JR., in his official capacity as County Commissioner of Murray County, *did place orders and purchase road and bridge building and maintenance materials and supplies for Murray County from various vendors, and in particular, Ernest Leslie Irwin*, d/b/a either Independent Industries, Incorporated, or Machinery Parts and Service; *Tommy L. Craft*, d/b/a T.L. Craft Road and Bridge Materials; *Billy J. Klutts*, d/b/a Okie Equipment Company; and *James E. Palmer*, d/b/a United Industrial Sales, Incorporated, *in exchange for which the defendant did receive from these sellers of road and bridge*

---

**2.**  One of the mail fraud counts, count eleven, was dismissed before the case was submitted to the jury. The indictment also included four counts of extortion in violation of 18 U.S.C. § 1951 (1982), on which the jury returned a verdict for Lance.

**3.**  Counts one through ten and thirteen through forty-three.

**4.**  Count twelve and counts forty-four through sixty.

*building and maintenance supplies, cash kickbacks.*

"3. It was a further part of the scheme to defraud that the defendant BIRD *LANCE*, JR., in his official capacity as County Commissioner of Murray County, knowingly *did place orders with various vendors, and, in particular, Ernest Leslie Irwin, Guy Moore, Jr., and Billy J. Klutts*, for road and bridge building and maintenance material and supplies which were not actually to be delivered to the County *in exchange for which Ernest Leslie Irwin, Guy Moore, Jr., and Billy J. Klutts did pay to the defendant BIRD LANCE, JR., in cash, a sum of money representing approximately 50 percent of the billed value of the fictitious and nonexistent goods which were represented to have been sold to the County.*

"4. That on or about June 29, 1977, in the Eastern Judicial District of Oklahoma, BIRD LANCE, JR., the defendant herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did cause to be placed in an authorized mail depository, to be sent and delivered by the U.S. Postal Service, from Murray County, Oklahoma, located in the Eastern Judicial District of Oklahoma to Okie Equipment Company, Meeker, Oklahoma, and [sic] envelope containing County Warrant Number 752, in the amount of $403.59, all in violation of Title 18, United States Code, Sections 1341 and 2."

Rec., vol. I, tab 1, at 1–2 (emphasis added).

The first group of counts consists of those that incorporate count one by refer-ence and charge Lance with additional transactions, identified only by vendor, date, warrant (check) number, and amount, involving vendors Billy J. Klutts, d/b/a Okie Equipment Company, and Ernest Irwin, d/b/a either Independent Industries or Machinery Parts and Service. Significantly, Klutts and Irwin are included in paragraph three of count one, which alleges the receipt of money as a result of billing the county for nonexistent goods. As we stated in *Shelton,*

"[t]his allegation of 'split deals' or 'fifty-fifty splits' charges fraudulent conduct that necessarily deprived county citizens of money or property by asserting that the county paid for items it never actually received. Although the mere allegation of receiving a kickback is not sufficient to state a mail fraud violation under *McNally,* here the count alleging split deals was expressly incorporated by reference into every mail fraud count. As a result, while all the mail fraud counts could be read as charging only kickbacks, they could also all be read as charging that each transaction involved a split deal."

At 1495. These counts are substantially similar to the indictment under which Fred A. Shelton was convicted. *Id.* at 1495. As we held in *Shelton, id.* at 1495, the counts state a crime under *McNally.*

Next, *McNally* requires us to consider whether the jury instructions properly required the jury to find that the victim of the scheme was itself deprived of money or property. *See* 107 S.Ct. at 2882. The instructions given here mirror word-for-word the ones at issue in *Shelton.*[5] *See Shelton*

---

5. The Lance instructions state in pertinent part:
"In order to establish the mail fraud offenses, which are charged in Counts 1 through 10 and 12 through 60 of the indictment, the Government must prove the following essential elements beyond a reasonable doubt:
First: That the defendant devised or intended to devise a scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representations or promises; and
Second: That for the purpose of executing or furthering such scheme, or attempting so to do, the defendant placed, or knowingly caused to be delivered by mail, a letter or other mail matter in a post office or other authorized depository for mail matter, to be sent and delivered by the Postal Service.
"The word 'scheme' includes any plan or course of action designed to deceive others, and by false or fraudulent pretenses, representations or promises, to obtain money or property from any person so deceived.
"...
"A 'scheme to defraud' means some plan to procure money or property by means of false pretenses or representations calculated to deceive persons of ordinary prudence."
Rec., vol. IV, at 1449–50.

at 1495–96. In accordance with our analysis there, *id.* at 1496, we hold that the instructions are defective because they do not mandate the requisite finding of pecuniary loss by the victim.

Notwithstanding our conclusion that such instructions are inadequate under *McNally,* the record establishes that Lance suffered no resulting prejudice on those counts where split deals were actually proven. Some alleged deprivations of intangible rights are, by the very nature of the fraud involved, necessarily inextricably intertwined with the victim's loss of money or property. *See, e.g., United States v. Wellman,* 830 F.2d 1453, 1463 (7th Cir. 1987) ("the proof in this case removes any doubt regarding the nature of the scheme."). As we recognized in *Shelton,* a fraudulent scheme that deprives county citizens of their right to honest government by a split deal, in which the county pays for items it never actually receives, of necessity deprives the victim of money. *Shelton,* at 1495.

We have carefully reviewed the record. The testimony establishes unequivocally that split deals were the basis, in whole or in part, of counts one, fourteen through sixteen, eighteen, twenty-six, twenty-seven, thirty, and thirty-two through thirty-seven. Under these circumstances, there is no possibility that the jury convicted Lance on the counts without a finding that his fraudulent scheme deprived the county of money. Accordingly, he is not entitled to relief on these counts.

■ The testimony establishes that the remaining counts in group one involved ten percent kickbacks to suppliers rather than split deals. Under our holding in *Shelton, id.* at 1496, we conclude that Lance is entitled to relief on counts two through ten, thirteen, seventeen, nineteen through twenty-five, twenty-eight, twenty-nine, thirty-one, and thirty-eight through forty-three, because the jury was permitted to convict him without finding that the county, as opposed to the suppliers, was deprived of money.

## B. Insufficiently Indicted Counts

Next we consider the second group, counts twelve and forty-four through sixty, which are those counts that did not allege a split deal. Although some of the counts in this group also incorporate count one by reference, see count twelve and forty-four through fifty-two, the vendors named in these counts, James Palmer, d/b/a United Industrial Sales, and Tommy Craft, d/b/a T.L. Craft Road & Bridge Materials, are not named in paragraph three of count one alleging split deals, but are only named in paragraph two alleging kickbacks. *See* supra at 1499.

The rest of the counts in this group consist of count fifty-three and those counts that incorporate it by reference, counts fifty-four through sixty. Count fifty-three charges in pertinent part:

"1. During the period commencing on or about April 26, 1967, and continuing thereafter to November 10, 1981, BIRD LANCE, JR., the defendant herein, while serving as County Commissioner of Murray County, Oklahoma, devised and intended to devise a scheme to defraud the citizens of Murray County and to obtain money by depriving the citizens of that County of their right to have said County's business conducted openly, honestly, and impartially, free from corruption and undue influence.

"The scheme to defraud the citizens of Murray County was in substance as follows:

"2. As a part of the scheme to defraud, BIRD LANCE, JR., in his official capacity as County Commissioner of Murray County, *would enter into lease-purchase agreements* for road building and maintenance equipment with Ernest Leslie Irwin, d/b/a Independent Industries, Incorporation, *in exchange for which the defendant did receive from Ernest Leslie Irwin cash kickbacks for encumbering the funds of the County in this manner.*"

Rec., vol. I, tab 1, at 5 (emphasis added). These counts thus allege that Lance entered into lease-purchase agreements with a vendor who paid him kickbacks.

■ All of the counts in the second group charge only a scheme to defraud county citizens of intangible rights by the acceptance of kickbacks from third persons. These counts are virtually identical in all relevant respects to the indictment underlying the conviction of Marvin James, which we considered in *Shelton.* *See* at 1492–93. We concluded there that James was entitled to relief because "[t]he indictment contains no language which can be construed to allege that the victims of the fraud were deprived of money or property. Accordingly the indictment fails to charge a violation of the mail fraud statute as it has been construed in *McNally.*" *Id.* at 1493. The analysis and authorities upon which we relied in reaching that decision, *id.* at 1492–95, require the same conclusion here.

### III.

In sum, we conclude that Lance has failed to establish prejudice with respect to the counts involving split deals, and we therefore affirm the denial of relief on those counts. Lance was sentenced to twenty-seven months on count one and three months on the remaining counts, to run consecutively. He was also fined $1000 on each count. We have affirmed the validity of count one and thirteen of the remaining counts,[6] for a total valid sentence of sixty-six months or five and one-half years. Lance began serving his sentence on March 30, 1984, and thus has time remaining on his sentence.

On the remaining counts,[7] we hold that Lance's mail fraud convictions are invalid because either the indictment failed to charge a crime or the jury instructions and evidence permitted Lance to be convicted on the basis of conduct that is not a crime. We remand with directions that the district court vacate the convictions, fines, and sentences on those counts. On remand, the district court should recalculate the fines

and the exact time remaining to be served on the counts we have upheld.

REVERSED AND REMANDED.

---

6. Counts fourteen through sixteen, eighteen, twenty-six, twenty-seven, thirty, and thirty-two through thirty-seven.

7. Counts two through ten, twelve, thirteen, seventeen, nineteen through twenty-five, twenty-eight, twenty-nine, thirty-one, and thirty-eight through sixty.