Thomas A. **BELT,** Petitioner–Appellee,

v.

**UNITED STATES of America, et al.,** Respondents–Appellants.

No. 88–3293.

United States Court of Appeals, Eleventh Circuit.

March 28, 1989.

---

Leon Warren Weidman, U.S. Atty's Office, Los Angeles, Cal., for respondents-appellants.

William B. Plowman, Tampa, Fla., for petitioner-appellee.

Before FAY and KRAVITCH, Circuit Judges, and LYNNE[*], Senior District Judge.

FAY, Circuit Judge:

The United States challenges a district court order which vacated Thomas A. Belt's sentence and conviction for two counts of wire fraud under 18 U.S.C. § 1343 (1982). 679 F.Supp. 1088. The indictment alleged that Belt released confidential bid information to companies competing in a subcontract bidding process. The dispositive issue presented is whether the indictment is sufficient to charge Belt

---

[*] Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

with an offense under the wire fraud statute in light of the property restrictions imposed by *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The district court found the indictment deficient because it did not allege that Belt's fraudulent scheme deprived the victim, his employer, of money or property. We find that the confidential bid information Belt exchanged for money bribes constituted property under the wire fraud statute. The allegation that Belt released confidential bid information to companies competing in the bidding process, thus, sufficiently alleges a deprivation of property under the wire fraud statute. Therefore, we reverse the district court's order and reinstate the conviction.

## I. BACKGROUND

Fluor Engineers, Inc. (Fluor) hired Thomas A. Belt, petitioner, as a principal engineer of contracts in October of 1980. Fluor assigned Belt to work in Jubail, Saudi Arabia, on a project (PEL/SADAF Project) for which Fluor was the general contractor and overall contract manager. The project involved construction of a $5 billion petrochemical manufacturing plant and was the result of a joint venture between the Saudi Arabian government and a Saudi Arabian corporation known as PEL/SADAF. As a principal engineer, Belt's duties included overseeing the subcontractor bid lists, the bidding, the bid evaluation and the award of subcontracts for the PEL/SADAF Project.

The indictment charges that while Belt was an employee of Fluor, he devised a scheme to defraud the company of its right to honest business. The indictment alleges that Belt defrauded Fluor of "its right to have its business conducted honestly, impartially, free from deceit, corruption, fraud, dishonesty and conflict of interest and of its right to the conscientious, loyal, honest, faithful and disinterested services, decisions, actions and performance of duties by its employees."

More specifically, the indictment alleges that Belt carried out his fraudulent scheme from November of 1980 to about September 22, 1983 by soliciting "illegal bribes from companies seeking subcontracts for the PEL/SADAF Project." In return, Belt agreed to and did "place those companies on bid lists, *supply the companies with secret bid information* and otherwise improperly aid those companies in obtaining subcontracts on the PEL/SADAF Project." (*emphasis added*). Additionally, the indictment alleges that after receiving the subcontracts, the companies would pay Belt bribes either in cash or through wire transfers to a bank account in his wife's name.

On May 30, 1986, Belt entered a guilty plea and was sentenced to four years in prison and three years probation.[1] On June 24, 1987, the United States Supreme Court decided *McNally.* On September 22, 1987, Belt filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, or alternatively, a motion to vacate the conviction, on the grounds the indictment failed to allege an offense under the wire fraud statute according to *McNally.* The district court agreed and granted Belt relief.[2] Because we find that Belt's em-

---

1. Pursuant to Rule 20 of the Federal Rules of Criminal Procedure, the defendant entered a guilty plea in the Middle District of Florida to an indictment from the Central District of California.

2. While the district court found that the indictment failed to state an offense under the wire fraud statute, the court also determined that *McNally* should apply retroactively. We agree. The circuit courts of appeals which have directly addressed this issue all agree that *McNally* should apply retroactively. *See United States v. Osser,* 864 F.2d 1056 (3rd Cir.1988); *Magnuson v. United States,* 861 F.2d 166 (7th Cir.1988);

*United States v. Lance,* 848 F.2d 1497 (10th Cir. 1988); *United States v. Shelton,* 848 F.2d 1485 (10th Cir.1988); *United States v. Asher,* 854 F.2d 1483, 1487 (3rd Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989).

The decisional rule in *McNally* differs from the typical decision which is analyzed for retroactive application. For instance, retroactivity is often analyzed in cases involving matters of constitutional criminal procedure. *See Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Retroactivity in these

ployer was deprived of its intangible property right in the confidential bid information, we reverse.

## II. *McNally* Claim

■ Generally, an indictment is sufficient if it: 1) sets forth the elements of the offense in a manner which fairly informs the defendant of the charge against which he must defend and 2) enables him to enter a plea which will bar future prosecution for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). If a general description of the offense is given then it is also necessary to allege facts and circumstances which will inform the defendant of the specific offense with which he is being charged. *Id.* The requirement that an indictment set forth the essential elements of an offense functions not only to give the defendant notice as guaranteed by the sixth amendment, but also to inform the court of the facts alleged to enable it to determine whether the facts are sufficient in law to support a conviction. *United States v. Italiano*, 837 F.2d 1480, 1486 (11th Cir.1988).

■ The elements of an offense under the wire fraud statute are 1) a scheme to defraud, and 2) the use of wire communications in furtherance of the scheme. *Per-*

*eira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *Lombardo v. United States*, 865 F.2d 155, 157–58 (7th Cir.1989). The wire fraud statute tracks the language of the mail fraud statute, 18 U.S.C. § 1341 (1982). The statutes are given a similar construction and are subject to the same substantive analysis. *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987); *United States v. Connor*, 752 F.2d 566, 573 n. 1 (11th Cir.), *cert. denied*, 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985).

In *McNally*, the Supreme Court interpreted the first element of the mail fraud statute § 1341 as being limited to schemes which deprive victims of property rights. The Court rejected the theory that the statute protects against schemes which deprive citizens of their intangible right to honest government.[3] In *McNally*, a politician, Hunt, who was the state Democratic Party chairman, enjoyed de facto control over selecting the insurance agencies from which Kentucky would purchase its insurance policies. The scheme involved Hunt and the Wombell Insurance Company (Wombell). Wombell agreed with Hunt that in exchange for security in its position as Kentucky's insurance agent, it would share resulting commissions in excess of $50,000 with other insurance agencies designated by Hunt. Among the companies

cases is determined through a weighing of factors. Slightly different factors are examined when retroactivity is of a civil or nonconstitutional nature. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Acoff v. Abston*, 762 F.2d 1543 (11th Cir.1985).

In contrast to the procedural cases typically subject to retroactivity analysis, *McNally* involves an interpretation of the reach of a criminal statute. The *McNally* Court discerned the congressional intent in enacting the mail fraud statute and found that Congress never intended certain acts to be labeled criminal under the statute. A decision which determines that Congress never intended certain conduct to fall within the proscription of a criminal statute must necessarily be retroactive. *United States v. Osser*, 864 F.2d at 1058–59 (1988).

**3.** *McNally* overturned the line of cases relying on the intangible rights theory, which interpreted the mail and wire fraud statutes as proscribing schemes by government officials to defraud citizens of their intangible right to honest and impartial government. These cases held that dishonest acts by government officials were vio-

lations of the mail or wire fraud statute even though the schemes were not aimed at depriving the victims of money or property. *See e.g., United States v. Clapps*, 732 F.2d 1148, 1152 (3rd Cir.), *cert. denied*, 469 U.S. 1085, 105 S.Ct. 589, 83 L.Ed.2d 699 (1984); *United States v. Mandel*, 591 F.2d 1347, 1359–60 (4th Cir.), *aff'd in part on reh'g*, 602 F.2d 653 (4th Cir.1979) (en banc) (per curiam), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *United States v. Rabbitt*, 583 F.2d 1014 (8th Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *United States v. Keane*, 522 F.2d 534 (7th Cir.1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976). For an extensive discussion of the pre-*McNally* and post-*McNally* decisions *see United States v. Asher*, 854 F.2d 1483 (3rd Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989). *See generally* Comment, *The Intangible Rights Doctrine and Political Corruption Prosecutions Under the Federal Mail Fraud Statute*, 47 U.Chi.L.Rev. 562, 563 (1980).

Hunt designated was a company controlled by Hunt, McNally and another. Ultimately, McNally was convicted of one count of mail fraud.

On appeal, the Supreme Court reviewed the legislative history of the mail fraud statute and determined that Congress intended the statute to be limited in scope to the protection of property rights. *McNally*, 483 U.S. at ——, 107 S.Ct. at 2881. In vacating McNally's conviction, the Supreme Court emphasized that no property loss had been suffered by Kentucky. The Court noted that the jury was not charged that in the absence of the scheme "the Commonwealth would have paid a lower premium or secured better insurance." *Id.* at ——, 107 S.Ct. at 2882. The petitioners merely had exercised control over commissions paid by Wombell to other insurance companies. *Id.* Finally, while the Court found that Congress intended the mail fraud statute to protect only property rights, it also emphasized that the phrase "any scheme or artifice to defraud" is to be "interpreted broadly insofar as property rights are concerned." *Id.* at ——, 107 S.Ct. at 2880 (quoting *Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896)."[4]

The Court further elaborated on the reach of the mail and wire fraud statutes in *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). In *Carpenter*, Foster Winans, a reporter for the Wall Street Journal, and Kenneth Felis, a stockbroker, entered into a scheme in which Winans released the contents and timing of the financial column "Heard on the Street" to Felis and several other brokers prior to the publication of the columns. *Id.* at ——, 108 S.Ct. at 319. The brokers would then trade on the information, speculating on its probable impact on the market. *Id.* The resulting profits were shared. Both Winans and Felis were found guilty of several securities violations and of violating the federal mail and wire fraud statutes.

On appeal, the petitioners challenged their wire and mail fraud convictions on the grounds that their activities did not constitute a scheme to defraud the Journal of money or property as required by *McNally*. *Id.* at ——, 108 S.Ct. at 320. They argued that the Journal's prepublication interest in the confidentiality of the financial news column was an intangible interest outside the reach of the mail and wire fraud statutes. *Id.* The Supreme Court disagreed, finding that the Journal's interest in the confidentiality of the columns was a property right within the protection of § 1341 and § 1343.

In affirming the wire and mail fraud convictions, the Court stated that *McNally* did not "limit the scope of § 1341 to tangible as distinguished from intangible property rights" and found that "confidential business information has long been recognized as property." *Id.* at ——, 108 S.Ct. at 320 (citations omitted). Further, the Court refused to require that a monetary loss result from the fraudulent scheme. Rather, the Court held that it was sufficient that the Journal had been deprived of "its right to exclusive use of the information." *Id.* at ——, 108 S.Ct. at 321. Hence, the deprivation of the Journal's property right in the confidentiality of the information in the columns, and in its exclusive use prior to publication was sufficient to sustain the mail and wire fraud convictions.

■ Although the *Carpenter* court characterized the right in the confidential information as intangible, the court nevertheless considered it a property right. Together, *McNally* and *Carpenter* teach that the mail and wire fraud statutes do not protect against fraudulent schemes involving intangible, non-property, non-monetary

---

4. On Oct. 21, 1988, the Senate and House of Representatives passed the Anti–Drug Abuse Act of 1988 which contained a section amending the mail fraud statute. Congress amended the mail fraud statute by adding, "the term 'scheme or artifice to defraud' includes the scheme or artifice to deprive another of the intangible right of honest services." Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7603 (1988) (to be codified at 18 U.S.C. § 1346). Because this act came into effect after Belt filed his petition for writ of habeas corpus, the amendment does not govern this case.

rights. *United States v. Dynalectric Co.*, 859 F.2d 1559, 1570 (11th Cir.1988).

▮ In this case, the petitioner released confidential business information of his employer to third parties. In exchange for bribes, Belt released business information regarding the subcontractor bids submitted for the PEL/SADAF Project which made the bids submitted higher than they normally would have been. We see little difference in the character of the confidential information involved in this case and that involved in *Carpenter*. In both cases, the confidentiality of the information was integral to the proper operation of the employer's business and to its reputation. Thus, although the scheme did not cause Fluor a direct monetary loss, like the information in *Carpenter*, the confidential information constituted an intangible property right protected under § 1343.

▮ Petitioner further argues that while the government could have charged a crime in the indictment under *McNally*, the indictment is insufficient because it relies solely on the *McNally* intangible non-property rights theory that Fluor was deprived of honest services. We do not find the fact that the indictment contains language charging under the *McNally* theory fatal. We acknowledge that convictions which rest solely on an intangible non-property rights theory should be vacated. *See United States v. Conover*, 845 F.2d 266 (11th Cir.1988); *United States v. Ochs*, 842 F.2d 515 (1st Cir.1988); *United States v. Covino*, 837 F.2d 65 (2nd Cir.1988). However, when the court finds a loss of property or money resulted from the fraudulent scheme, the conviction should be sustained, despite a partial reliance on the intangible rights theory. *See United States v. Dyna-*

*lectric*, 859 F.2d 1559 (11th Cir.1988); *United States v. Perholtz*, 836 F.2d 554, 559 (D.C.Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). Indeed, the Third Circuit stated that where "a violation of the rights involved would result in depriving another of something of value, and the indictment, the proofs and the instructions are based on that fact, then the presence of intangible rights language will not prove fatal on appeal." *United States v. Asher*, 854 F.2d 1483, 1494 (3rd Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989). In this case, the scheme of disclosing confidential bid information necessarily resulted in an intangible property loss to Fluor. Hence, the fact the indictment also contains language charging under the intangible rights theory is not fatal to the conviction.

▮ Finally, Belt argues that the confidential bid information lacked commercial value to Fluor because, unlike the news information involved in *Carpenter*, the gathering of the confidential bid information was not the employer's primary business function. This argument is easily refuted. First, the value of the confidential information is evidenced by the companies' willingness to pay significant funds for the information. Second, the "Factual Basis for Guilty Plea" (Factual Basis), which is a statement of the uncontested facts regarding the scheme, reveals that Fluor was required to pay refunds to its clients amounting to approximately $2.7 million due to the excessive charges which resulted from the corrupt bidding process. Finally, the Factual Basis states that Belt's actions have materially affected Fluor's reputation and ability to gain new business in Saudi Arabia.[5] Thus, the information

---

**5.** A similar argument was made before the Second Circuit in *United States v. Grossman*, 843 F.2d 78 (2nd Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989). In *Grossman*, a law firm associate disclosed confidential client information regarding a corporate recapitalization to several friends and family members. Public announcement of the proposed recapitalization was expected to increase the price at which the corporate stock traded. Those receiving the information bought the stock and realized a substantial profit when the

public announcement was finally made. The profits were shared. Grossman, the law associate, was convicted of 19 counts of securities fraud and 19 counts of mail fraud.

On appeal, Grossman argued that the law firm had no property interest in the confidential information because the law firm could not have used the information to its own commercial advantage and the law firm did not gather the information through its own skill, labor and money. *Id.* at 86. The Second Circuit rejected this argument as specious. Even though the

was commercially valuable to Fluor. We find that the specific facts and circumstances alleged in the indictment are sufficient in law to state an offense under the wire fraud statute, and to sustain Belt's conviction.[6]

REVERSED.

information did not share identical characteristics with the confidential news information involved in *Carpenter* did not mean it was not property. *Id.* Although the law firm could not trade on the information and was not in the business of disseminating the confidential information, the information was still commercially valuable property to the firm. *Id.* Maintaining the confidentiality of client information was essential to upholding the firm's reputation and preserving its client base and its ability to obtain new clients. *Id.* Hence, Grossman's premature release of the information constituted a deprivation of property sufficient to uphold the mail fraud convictions. Similarly, in this case, while Fluor was not in the business of gathering the confidential information at issue, the information nevertheless did have commercial value to Fluor.

6. For recent decisions which review mail or wire fraud convictions and analyze intangible property rights in light of *McNally* and *Carpenter, see Lombardo v. United States,* 865 F.2d 155 (7th Cir.1989); *United States v. Porcelli,* 865 F.2d 1352 (2nd Cir.1989); *United States v. Dynalectric Co.,* 859 F.2d 1559 (11th Cir.1988); *United States v. King,* 860 F.2d 54 (2nd Cir.1988); *United States v. Slay,* 858 F.2d 1310 (8th Cir.1988); *United States v. Zauber,* 857 F.2d 137 (3rd Cir. 1988); *United States v. Asher,* 854 F.2d 1483 (3rd Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989); *United States v. Horton,* 847 F.2d 313 (6th Cir.1988); *United States v. Conover,* 845 F.2d 266 (11th Cir.1988); *United States v. Perholtz,* 842 F.2d 343 (D.C.Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).