UNITED STATES of America, Plaintiff,

v.

Kenneth Lee COOK, Defendant.

No. CR–81–199–D.

United States District Court,
W.D. Oklahoma.

March 16, 1995.

Vicki Miles–LaGrange, U.S. Atty. by K. Lynn Anderson, Asst. U.S. Atty., Oklahoma City, OK, for plaintiff.

Mike Norman, Muskogee, OK, for defendant.

*ORDER*

DAUGHERTY, Senior District Judge.

▇ Before this Court is the Motion To Vacate, Set Aside, Or Correct Sentence pursuant to § 2255 [1] of Kenneth Lee Cook, De-

---

1. The pleadings indicate that Cook was released from prison on November 10, 1983 and that he had a final date for completion of parole of September 12, 1984. Cook does not assert that he was imprisoned again on the conspiracy charge nor does he claim that any conditions have been imposed on him which now confine and restrain his freedom. As a result, the "in custody" requirement of 28 U.S.C. § 2255 is not

satisfied in this case. *United States v. Condit,* 621 F.2d 1096 (10th Cir.1980). The Motion To Vacate Sentence pursuant to § 2255 should properly have been filed as a petition for writ of error coram nobis which, though with more stringent standards, is the appropriate procedural vehicle for attacking a conviction when a defendant is no longer in custody. *U.S. v. Drobny,* 955 F.2d 990, 996 (5th Cir.1992). This

fendant in the above case, filed October 12, 1994. In such Motion, Movant Cook urges that he is entitled to vacation of his conviction and sentence for the reason that conduct to which he pled guilty is no longer criminal. The United States has filed a Response in objection to Cook's Motion To Vacate and such Response has been replied to by Cook.

Kenneth Lee Cook pled guilty on November 13, 1981, to a one-count Information which charged Cook with the crime of conspiracy in violation of 18 U.S.C. § 371. The Information alleged that between 1976 and 1981, Cook, as a county commissioner of Dewey County, Oklahoma, conspired with certain suppliers of road and bridge building and maintenance materials (1) to defraud the United States by impeding and defeating its tax computation and collection functions with regard to Cook's personal income taxes [2] and (2) to violate the mail fraud statute, 18 U.S.C. § 1341, by devising a scheme to defraud Dewey County, Oklahoma, and its citizens of the right to have the County's business conducted honestly and to obtain money from Dewey County by means of false and fraudulent pretenses and representations, well knowing at the time that the pretenses and representations were false when made, and to cause the United States mails to be used in furtherance of the scheme.

The conspiracy count charged Cook with two separate criminal violations, in that it accused Cook and his co-conspirators of conspiring to violate the defraud the United States clause of 18 U.S.C. § 371 by impairing and obstructing the tax collection function of the United States regarding the personal income taxes of Cook and also accused Cook and his co-conspirators of devising a scheme to defraud Dewey County, Oklahoma, in violation of the mail fraud statute of the United States, 18 U.S.C. § 1341, and do so in two separate ways: (1) by depriving the county and its citizens of the right to have the county business conducted honestly and impartially and (2) by obtaining money from Dewey County by means of false and fraudulent pretenses and representations, well knowing at the time that the pretenses and representations were false when made, and to cause the United States mails to be used in furtherance of the scheme.

The alleged conspiracy is said to have involved the receipt by Cook of certain kickbacks from the suppliers. Some of the kickbacks consisted of ten-percent of the purchase price of goods purchased by the county and actually delivered and some kickbacks consisted of fifty-percent of the price of materials and supplies ordered by Cook which were paid for by Dewey County but never delivered, termed fifty-fifty split deals. All kickbacks were made to Cook by suppliers.

On August 10, 1982, Movant Cook was sentenced to a term of imprisonment of two years and fined $10,000. Cook paid the fine in full on the day of sentencing and, as previously stated, Cook has been released from prison and completed his parole in 1984.

In 1987, the United States Supreme Court determined in *McNally v. United States*, 483

Court, however, may and will treat the Movant's Motion To Vacate as a petition for writ of error coram nobis and address the merits of the Petitioner's Motion on that basis. *U.S. v. Bonansinga*, 855 F.2d 476 (7th Cir.1988).

**2.** *See, U.S. v. Helmsley*, 941 F.2d 71, at 90–91 (2nd Cir.1991), and *United States v. Klein*, 247 F.2d 908 (2nd Cir.1957), for the viability of this charge of defrauding the United States or any agency thereof under 18 U.S.C. § 371. These cases clearly hold that under 18 U.S.C. § 371, it is a federal crime to conspire to defraud the United States, or any agency thereof. *Helmsley* holds: "Section 371 thus defines two ways in which its provisions are violated: (1) conspiring to commit 'offenses' that are specifically defined in other federal statutes, and (2) conspiring to 'defraud the United States.' "

While the Information did not list a statutory citation for the charge of defrauding the United States, such omission is not significant as long as the Information fairly informs the defendant of the charge against him. *U.S. v. Daily*, 921 F.2d 994 (10th Cir.1990). "It is the statement of facts in an indictment or information and not the statutory citation that is determinative of validity." *United States v. Wyatt*, 518 F.Supp. 1110, 1113 (S.D.Texas 1991), citing *United States v. Bethany*, 489 F.2d 91 (5th Cir.1974).

The Court finds that the Information fairly informed Cook of the charge made against him that the conspiracy had as an objective conduct on his part and that of his co-conspirators which would avoid some of his personal income taxes. *See,* transcript of hearing conducted in accepting Cook's plea of guilty to the conspiracy charge on pages 6 and 7 herein.

U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), that the mail fraud statute, 18 U.S.C. § 1341, should be limited in application to those schemes to defraud which were intended to deprive the victims of the scheme of money or property. The Supreme Court held in that case that the statute did not protect "the intangible right of the citizenry to good government." *McNally,* 483 U.S. at 356, 107 S.Ct. at 2879. Movant Cook argues that because he pled guilty to conduct which is no longer criminal under *McNally,* he is entitled to vacation of his sentence and refund of the $10,000 fine. The Government has responded that Cook is not entitled to the relief sought, as an examination of the Information at issue to which Cook pled guilty clearly shows that it charged him with conspiring to defraud the United States and also conspiracy to defraud Dewey County, Oklahoma, and therefore alleged a conspiracy to violate multiple crimes, most of which survived the effect of the *McNally* decision.

■■■ Certain familiar and well-established legal principles are involved in the matter now before the Court. When 28 U.S.C. § 2255 is an inappropriate remedy, a criminal conviction may be attacked by a writ of error coram nobis. Such writ is an extraordinary form of relief which should be granted "only under circumstances compelling such action to achieve justice." *United States v. Morgan,* 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954). A charge of criminal conspiracy under 18 U.S.C. § 371 is considered a separate crime from the substantive crime or crimes that the alleged co-conspirators are alleged to have conspired to violate. *U.S. v. Davis,* 544 F.2d 1056 (10th Cir.1976). A single charge of criminal conspiracy under 18 U.S.C. § 371 can allege multiple statutory offenses that the co-conspirators conspired to violate and a conviction will be upheld so long as there is sufficient evidence to show that the co-conspirators are guilty of any one of the several offenses. *United States v. Elam,* 678 F.2d 1234, 1250 (5th Cir.1982). Where a conspiracy has multiple objectives, a conviction will be upheld so long as the evidence is sufficient to show that the defendants agreed to accomplish at least one of the objectives. *United States v. Alvarez,* 735 F.2d 461, 465 (11th

Cir.1984). A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

A review of the transcript of the hearing conducted on November 13, 1981, at which the Court accepted Cook's plea of guilty, shows that the Court discussed with Cook each individual aspect of the one-count conspiracy charge with which he was charged herein to include the alleged conspiracy to defraud the United States regarding its collection of revenue due on Cook's personal income taxes and the alleged scheme to defraud Dewey County, Oklahoma of money on the fifty-fifty split kickbacks on materials paid for by but never delivered to the county and causing the United States mails to be used in furtherance of the scheme under 18 U.S.C. § 1341. In pertinent part, the discussion was as follows:

> THE COURT: On or about November 15, 1976 and continuing thereafter until on or about July 20, 1981, did you conspire with these vendors to defraud the United States by defeating the lawful functions of the Internal Revenue Service in ascertaining the collection of revenue, namely your personal income tax, and that you agreed to a scheme to defraud Dewey County of its right to have its business conducted honestly and free from corruption, and to obtain money from the county by means of false pretenses, knowing at the time that these representations were false and that you caused the United States mails to be used in furtherance of this scheme?

> DEFENDANT COOK: Yes, sir.

> THE COURT: In furtherance of this scheme, did you approve purchases of materials from these vendors?

> DEFENDANT COOK: Yes, sir.

> THE COURT: Did you cause your county clerk's office to encumber funds and send through the United States mails warrants in payment of these supplies?

> DEFENDANT COOK: Yes, sir.

THE COURT: Did these payments cover supplies actually delivered and some supplies that were never delivered?

DEFENDANT COOK: Yes, sir.

THE COURT: In return for placing these orders, were you paid in currency approximately ten percent in the way of kickbacks on supplies delivered and 50 percent on supplies never delivered?

DEFENDANT COOK: Yes, sir.

THE COURT: Did the vendors cause false invoices for claimed deliveries which did not exist and never were delivered?

DEFENDANT COOK: Yes, sir.

THE COURT: In return for these orders, did the vendors pay in currency ten percent in kickbacks for materials delivered and 50 percent in the way of kickbacks on nonexistent materials?

DEFENDANT COOK: Yes, sir.

. . . . .

THE COURT: Did these vendors from 1976 to 1981 pay you sums of money in return for the approval of the sales and to avoid making records of these payments of the ten percent kickbacks?

DEFENDANT COOK: Yes, sir.

. . . . .

THE COURT: In filing your Income Tax Returns for the calendar years 1976 through 1980, is it true that you did not report therein the currency that you had received in connection with the purchase of materials and supplies as above stated?

DEFENDANT COOK: Yes, sir.

In accepting Cook's plea of guilty to each of the offenses charged in the Indictment, the Court relied upon the Defendant's admission of defrauding the United States in its function to collect the Defendant's personal income taxes and Defendant's admission of devising a scheme with suppliers to defraud Dewey County, Oklahoma of money paid for materials he ordered and which the county paid for but which were never delivered to the county, using false pretenses and representations and the United States mails in furtherance of the scheme. The Court did not rely solely on Defendant's further admission that he also devised a scheme with suppliers to defraud Dewey County, Oklahoma and its citizens of the right to have the county's business conducted honestly.

The *McNally* decision did not involve a charge of defrauding the United States under 18 U.S.C. § 371 but only a scheme to defraud under the federal mail fraud statute, 18 U.S.C. § 1341. While the case condemns the honesty in government part of a mail fraud charge, it does not condemn the conviction of a defendant who devises a scheme with suppliers to defraud a victim in the fifty-fifty split type deals which caused a victim to pay money for materials it never received. It cannot be questioned from the record herein, including Cook's own admissions, that Dewey County was deprived of and lost money in the fifty-fifty split deals which were devised by Cook and his co-conspirators to defraud said county.

This result is supported by the post-*McNally* cases from this and other circuits. The first case our circuit decided in this area was *United States v. Shelton,* 848 F.2d 1485 (10th Cir.1988).[3] Unlike our case which involved an Information and a plea of guilty to the same by Cook, the case of *Shelton* involved Indictments, pleas of not guilty to the same and separate jury trials and convictions of two county commissioners, Shelton and James.[4] Hence, in *Shelton* there were no admissions of guilt of anything by either of the two defendants. Also *Shelton* treated only with the mail fraud statute, 18 U.S.C. § 1341, and not with the conspiracy statute, 18 U.S.C. § 371, nor with the crime of defrauding the United States. The Court found as to James that he did not engage in any fifty-fifty split deals.[5] The Court further

---

**3.** This case and *U.S. v. Lance,* 848 F.2d 1497 (10th Cir.1988), were decided by our circuit on motions under 28 U.S.C. § 2255, as all defendants were in prison when the cases were filed and decided and hence were in custody.

**4.** Their separate appeals were consolidated in this case.

**5.** Like the deprivation of intangible rights charge, the charge of receiving a ten-percent kickback from a supplier is not sufficient to state a mail fraud violation under *McNally,* as such

found that even though Shelton had engaged in fifty-fifty split deals, the jury instructions were flawed and there was a lack of proof at the trial that the county involved had been deprived of any money or property in Shelton's case. For these separate reasons, the Court found that each appellant was entitled to relief under *McNally* on their mail fraud convictions. However, our circuit stated in the case regarding Shelton's fifty-fifty split deals as follows:

> This allegation of 'split deals' or 'fifty-fifty splits' charges fraudulent conduct that necessarily deprived county citizens of money or property by asserting that the county paid for items it never actually received. Although the mere allegation of receiving a kickback [which could be a ten percent of price kickback from a supplier to a county commissioner] is not sufficient to state a mail fraud violation under *McNally*, here the count alleging split deals was expressly incorporated by reference into every mail fraud count. As a result, while all the mail fraud counts could be read as charging only kickbacks, they could also all be read as charging that each transaction involved a split deal. We therefore conclude that the mail fraud counts state a crime under *McNally*.

*Accord, United States v. Lance*, 848 F.2d 1497, 1501 (10th Cir.1988) (split deals deprive the county of money); *United States v. Stoneman*, 870 F.2d 102, 106 (3rd Cir.1989) (conspiracy charge is valid even though it alleged scheme to defraud citizens of their intangible rights where it also alleged scheme to defraud state by conduct which caused money loss to state); *Belt v. United States*, 868 F.2d 1208, 1213 (11th Cir.1989) (wire fraud conviction solely on intangible nonproperty rights should be vacated; but when there is a loss of money or property the conviction should be sustained despite partial reliance on intangible rights theory).

payment would be made directly by the suppliers to a county commissioner and hence did not deprive the county of money or property. *U.S. v. Shelton*, 848 F.2d 1485, 1495 (10th Cir.1988).

6. Cook states in his Reply to the Government's Response filed herein that his requested relief should be granted as a matter of law without hearing. In its consideration of this matter, the

In conclusion, it is fitting to repeat that as the writ of error coram nobis should be granted "only under circumstances compelling such action to achieve justice," and as Cook has admitted by pleading guilty to conduct defrauding the United States under 18 U.S.C. § 371 and defrauding Dewey County by fifty-fifty split deals under 18 U.S.C. § 1341, not affected by *McNally*, this Court finds that under the law and upon the record herein justice would not be achieved by granting Cook a writ of error coram nobis and his request therefor should be denied.[6]

IT IS SO ORDERED.

Court finds that a hearing is not necessary. 24 C.J.S. Criminal Law § 1628, page 252, *et seq.* In view of the ruling made herein, it is not necessary for the Court to treat with the Government's assertion of lack of due diligence and delay by Cook in not seeking the relief requested herein until 1994 when the *McNally* ruling was made in 1987.