**UNITED STATES of America**

v.

**Bob A. CLAPPS, Appellant.**

**UNITED STATES of America**

v.

**Robert T. POWELL, Appellant.**

**Nos. 83–3421, 83–3434.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) April 3, 1984.

Decided April 19, 1984.

Rehearing Denied May 10, 1984.

Charles P. Gelso, Wilkes-Barre, Pa., for appellant, Bob A. Clapps.

David Dart Queen, U.S. Atty., Albert R. Murray, Jr., Asst. U.S. Atty., Scranton, Pa., for appellee.

Ronald D. Oley, Wilkes-Barre, Pa., for appellant, Robert T. Powell.

Before GIBBONS, SLOVITER, Circuit Judges, and BISSELL, District Judge.*

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

Bob A. Clapps and Robert T. Powell were convicted of conspiracy and substantive charges of mail fraud in violation of 18 U.S.C. § 1341 through the fraudulent procurement and marking of absentee ballots in connection with two primary elections and a general election. The defendants' first trial ended in a deadlocked jury and a mistrial was declared. At the retrial, the jury found Clapps guilty on thirteen counts of mail fraud and one count of conspiracy, and Powell guilty on five counts of mail fraud and one count of conspiracy. On appeal, they allege that the district court abused its discretion in denying their motions for a non-jury trial, for a mistrial due to alleged juror misconduct, and for judg-

* Hon. John W. Bissell, United States District Court for the District of New Jersey, sitting by designation.

ment of acquittal due to lack of sufficient evidence. Clapps also argues that the mail fraud statute does not encompass the conduct in which defendants engaged.

## I.

### Sufficiency of the Evidence

We can readily dispose of the contention that there was insufficient evidence to sustain the convictions. In reviewing a claim of insufficiency of the evidence after a guilty verdict, a court must view the evidence and the inferences logically deducible therefrom in the light most favorable to the government. *See, e.g., United States v. United States Gypsum Co.*, 600 F.2d 414, 416 (3d Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979).

■ There was ample evidence at trial from which the jury could have found that Clapps, the Democratic Chairman of the 120th Legislative District of Luzerne County, Pennsylvania, initiated a scheme with the aid of Powell and two other co-conspirators, Robert Outeda and George Stoss, to fraudulently obtain absentee ballots and send them to the Election Bureau. Pursuant to this scheme, before the May 15, 1979 primary election, Outeda obtained the signatures of 10 to 15 residents of the Hoskins Rest Home on applications for absentee ballots, gathered the ballots when they arrived at the Home, and turned them over to Clapps. Then, at Clapps' direction, Outeda obtained the voters' signatures on the declaration which appears on the envelope in which each completed absentee ballot is mailed. Outeda returned the envelopes to Clapps, and they were then sent to the Election Bureau. The evidence showed that the voters only signed the declarations and never saw the ballots.

Outeda also testified that before the November 6, 1979 general election, Clapps directed him to obtain signatures of several Hoskins Home residents on applications. As the district court stated, Outeda delivered these applications to Powell at Clapps' garage "who directed Outeda to sign the applications of [three voters] attesting to

the fact that they were unable to sign because of illness or physical disability." App. at 216a. Powell notarized all five applications. The Bureau sent five absentee ballots addressed to those voters, which were returned to the Bureau by mail with signatures on the envelope's declaration. At trial, all five voters testified that they never saw, marked, or mailed the ballots.

George Stoss, an indicted co-conspirator, testified that prior to the May 19, 1981 primary election, he procured applications from two residents of a low-income housing development pursuant to Clapps' direction. After the Bureau mailed ballots, Clapps instructed Stoss to go to the two voters and "make sure they vote for these people, that was on the [party] ticket." Stoss testified that he followed these directions and that Clapps reviewed the two marked ballots, which were later sent to the Bureau. Both voters were in fact capable of getting to the polls on Election Day and thus were ineligible to vote by absentee ballot.

There was testimony that none of the eight voters named in the mail fraud counts requested the documents at issue. Outeda gave extensive testimony to receiving applications and instructions from Clapps to obtain signatures, and to delivering applications and ballots to both defendants. Stoss testified that Clapps directed him to obtain marked ballots and then reviewed the ballots. Five of the applications were notarized by Powell although none of the voters appeared before him. Finally, there was expert testimony that both defendants' fingerprints were found on the voting materials.

The jury could have reasonably inferred from this evidence that the appellants mailed fraudulently obtained applications and ballots. Each participant in the scheme is responsible for each use of the mails in furtherance of the scheme regardless of whether he agreed to or even knew of a specific mailing. *United States v. Nance*, 502 F.2d 615, 619 (8th Cir.1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975). The evidence outlined above, supported by additional evidence,

also formed the basis for the conspiracy counts.[1] The evidence and the inferences deduced therefrom, when viewed in the light most favorable to the government, are sufficient to sustain the convictions for all counts of mail fraud and conspiracy.

## II.

### Right to Bench Trial

■ We turn next to appellants' contention that the court erred in refusing to grant them a bench trial. Appellants filed a joint pre-trial motion seeking to waive their rights to a jury trial pursuant to Fed.R.Crim.P. 23(a). Although the government concurred in the motion, the district court refused to grant it and the matter was tried before a jury.

Fed.R.Crim.P. 23(a) states:

Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the Government.

Appellants concede they do not have an absolute right to a non-jury trial, Fed.R. Crim.P. 23(a), and indeed that is the governing rule in light of *Singer v. United States*, 380 U.S. 24, 34–35, 85 S.Ct. 783, 789–90, 13 L.Ed.2d 630 (1965), and *Patton v. United States*, 281 U.S. 276, 312–13, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930). *See also United States v. Clausell*, 389 F.2d 34, 35 (2d Cir.1968). In *Singer*, also a mail fraud prosecution, the Supreme Court rejected the appellant's contention that he had an unrestricted right to waive a jury trial. Chief Justice Warren wrote: "We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and trial

judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him." 380 U.S. at 36, 85 S.Ct. at 790.

The district court stated that it denied appellant's post-trial motion because it anticipated the need for credibility evaluations that were "best left to a jury of twelve." App. at 225a. Appellants contend that the district court abused its discretion because the court acted under the erroneous premise that a jury trial would not result in an unfair trial. Specifically, appellants suggest that pretrial publicity, the prior conviction of Clapps on charges of bribery, conspiracy, and a violation of the Public Officials Ethics Act, the complexity of the issues and the alleged prejudicial nature of the government's evidence were such that no jury would be impartial.

The district court ruled, and we agree, that "[t]he reasons advanced by the defendants are plainly insufficient to show an abuse of discretion by the court in requiring that the case be decided by a jury." App. at 225a. As the *Singer* Court acknowledged, there might sometimes exist conditions under which a jury trial could not be impartial. 380 U.S. at 37–38, 85 S.Ct. at 791. But such conditions do not exist here.

The legal issues were simplified at trial by the parties' stipulation of law regarding the Pennsylvania Election Code. Clapps' prior convictions were admissible under Fed.R.Evid. 609(a) and the jury was clearly entitled to view the government's witnesses, some of whom were elderly and infirm, because the indictment charged that the scheme was to take advantage of such peo-

1. In addition to the evidence set forth above, the conspiracy counts were also supported by admissions in body tape recordings made by Stoss of conversations with Clapps and Powell. In a taped conversation of April 22, 1982 between Stoss and Clapps, Clapps advised Stoss how to handle the postal inspectors investigating the case. App. at 51a–53a. In the same conversation, Clapps stated that "the applications are mailed in" but suggested to Stoss that he tell the inspector that the voters mailed them. App. at

56a. In a taped conversation of May 6, 1982 between Stoss and Powell, Powell made comments such as "we have to stick together"; "who wants to rat, you know"; "if everybody plays it cool, I don't think there's gonna be no problem at all"; "don't tell them nothing"; and "they're figuring as soon as they can break somebody ... you know, then they'll bring everybody down, you know.... But who wants to be like that...." App. at 218a.

ple. For the foregoing reasons, we find the district court did not abuse its discretion in denying appellants' motion for a non-jury trial.

## III.

### Motion for Mistrial

Appellants contend that the district court abused its discretion in failing to grant their motion for mistrial due to alleged juror misconduct. After all the evidence had been received but prior to the closing arguments, one of the jurors reported to the court that some jurors had been discussing the case.[2] Upon the appellants' motion for mistrial, the court conducted a voir dire examination to correct any potential prejudice. As a result of the voir dire examination, the court removed the two jurors who had been identified as speaking and substituted alternates. See note 2 *supra.* The alternate juror who participated in the conversation was not removed as her services were not needed. A fourth juror was removed prior to jury deliberation because she stated that she was confused by the case and did not wish to deliberate. The remaining jurors stated that nothing occurred which would influence their verdict or their impartiality. Despite the removal of the two jurors whose views were tainted, appellants continue to allege that the jury as a whole was tainted and biased.

■ Appellants have the burden of showing that there is a "likelihood of actual prejudice." *United States v. Pantone,* 609 F.2d 675, 679 (3d Cir.1979). Appellants are unable to document such prejudice. Their claim is based solely on the juror's statement that up to six jurors heard the

impermissible comments. However, this was never proved by appellants.

■ In *United States v. Pantone,* where a corrective voir dire satisfied the trial court that nothing had occurred to influence a verdict or the jury's impartiality, we stated, "The trial court is obviously in a better position to observe the impact of premature jury discussions of guilt, and to make a considered judgment as to the effectiveness of a cautionary instruction." 609 F.2d at 679. In this case, the court conducted a corrective voir dire and was "convinced that there was no prejudicial juror misconduct and, further, that defendants received a fair trial." App. at 224a. Under these circumstances, we are satisfied that there was no abuse of discretion in denying the motion for a new trial.

## IV.

### Scope of Section 1341

■ Appellant Clapps contends that the mail fraud statute, 18 U.S.C. § 1341, does not proscribe a conspiracy to influence the outcome of an election. The relevant provision prohibits the use of the mails for executing "any scheme or artifice to defraud, *or* for obtaining money or property by ... false ... pretenses"[3] (emphasis added). We concluded in *United States v. Frankel,* 721 F.2d 917, 921 (3d Cir.1983), that the "scheme or artifice to defraud" clause is to be read independently of the "obtaining money or property by ... false ... pretenses" clause.

Clapps argues that Congress did not intend in section 1341 to interfere with the conduct of state elections. He relies on *United States v. Gradwell,* 243 U.S. 476,

---

**2.** The juror reported that one juror said "[w]ell he's a three time loser" and "they never should have put him on the stand," and one of the alternate jurors responded, "Yeah, he's gone"; the juror who had originally spoken purportedly said, "[H]e has to be guilty of some of them"; and the same alternate rebuked him, reminding him that "the judge told you not to discuss the case." According to the juror who reported the incident, another juror said, "Mr. Clapps, guilty."

**3.** In pertinent part the statute reads:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... [and] for the purpose of executing such scheme ... places in any post office ... any matter ... to be sent or delivered by the Postal Service ... shall be fined ... or imprisoned ... or both.
18 U.S.C. § 1341 (1982).

37 S.Ct. 407, 61 L.Ed. 857 (1917), in which the Supreme Court held that a conspiracy to "injure and oppress" candidates in a state primary nominating election did not fall within a federal statute proscribing a "conspiracy to defraud the United States." The statute at issue in *Gradwell* was construed by the Court as designed for prosecution of frauds against the operation of the government, such as upon the revenue. In contrast, the mail fraud statute is considerably more comprehensive.

In considering the scope of the "scheme or artifice to defraud" clause of section 1341, we stated in *United States v. Pearlstein*, 576 F.2d 531, 534 (3d Cir.1978), that the statute is "quite broad" and "generally proscribes 'any scheme or artifice to defraud' which in some way involves the use of the postal system." Subsequently, in *United States v. Boffa*, 688 F.2d 919 (3d Cir.1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983), involving a scheme to switch labor leasing contracts from one corporation to another, we reviewed the following decisions of other courts holding that section 1341 encompasses schemes that deprive persons of intangible rights or interests:

> *See United States v. Bronston*, 658 F.2d 920, 927 (2d Cir.1981) (client's right to "undivided loyalty" of attorney); *United States v. Van Barta*, 635 F.2d 999 (2d Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981)(employer's right to the honest and faithful service of employees); *United States v. Bohonus*, 628 F.2d 1167 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980) (same); *United States v. Condolon*, 600 F.2d 7 (4th Cir. 1979)("time, effort and expectations"); *United States v. Louderman*, 576 F.2d 1383 (9th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978) (privacy rights); *[United States v.] States*, 488 F.2d [761,] 765 [ (8th Cir.1973) ] ("certain intangible political rights"); *Shushan v. United States*, 117 F.2d 110 (5th Cir.), *cert. denied*, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941) (public's right to a public official's honest, faithful, and dis-

interested services); *United States v. Fineman*, 434 F.Supp. 189, 195 (E.D.Pa. 1977) (same).

688 F.2d at 925–26. We found the reasoning of those courts persuasive and held, *inter alia*, that a scheme to defraud employees "of the loyal, faithful, and honest services of their union official alleges a crime within the scope of the mail fraud statute." 688 F.2d at 931.

We see no reason why the same principles do not justify applying the mail fraud statute to a scheme to deprive an electoral body of its political rights to fair elections free from dilution from the intentional casting and tabulation of false, fictitious or spurious ballots. In so reasoning, we align ourselves with the Eighth Circuit, which concluded in *United States v. States*, 488 F.2d 761, 764 (8th Cir.1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 671 (1974), that a vote fraud scheme comes within section 1341. That court rejected the same argument that appellant Clapps makes with respect to congressional interference with state elections:

> The appellants' argument misinterprets the purpose of the mail fraud legislation. The focus of the statute is upon the misuse of the Postal Service, not the regulation of state affairs, and Congress clearly has the authority to regulate such misuse of the mails.... The purpose of 18 U.S.C. § 1341 is to prevent the Postal Service from being used to carry out fraudulent schemes, regardless of what is the exact nature of the scheme and regardless of whether it happens to be forbidden by state law.

*Id.* at 767 (citations omitted).

The appellant has presented no persuasive reason why the mail fraud statute should not apply to this case. We conclude that the indictment alleged an offense under 18 U.S.C. § 1341 and that there was sufficient evidence to support the conviction of all counts thereof.

Accordingly, we will affirm the judgment of the district court.