NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-1629

_____

UNITED STATES OF AMERICA

v.

KENNETH KILSON,

Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal Action No. 1:08-cr-00137-002)
District Judge: Chief Judge Gregory M. Sleet

_____

Submitted Under Third Circuit LAR 34.1(a)
September 21, 2012

_____

Before:  AMBRO, GREENAWAY JR., and O'MALLEY[*], Circuit Judges

(Opinion filed: October 04, 2012)

_____

OPINION  OF  THE  COURT

_____

O'MALLEY, Circuit Judge

_____

[*] Honorable Kathleen M. O'Malley, United States Court of Appeals for the Federal
Circuit, sitting by designation.

Kenneth Kilson seeks to appeal his conviction following a jury trial for conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C §§ 841(a)(1), (b)(1)(B), and 846. Kilson's counsel has filed an Anders brief in which he states there are no non-frivolous grounds for appeal. Kilson has also filed a *pro se* brief. We agree with counsel that there are no non-frivolous grounds for appeal and affirm.[*]

## I. BACKGROUND

On August 11, 2008, Anthony Comegys mailed three kilograms of cocaine in a U.S. Priority package from El Paso, Texas, addressed to Mary Butler, 169 State Street, Apt. 31, Dover, Delaware 19901. Law enforcement became aware of the package on August 12, 2008, when Tennessee drug interdiction agent, Rhett Campbell, stopped a vehicle for speeding on Interstate 40 in Hickman, Tennessee. Cassandra Norton was driving the vehicle and Comegys was sitting in the passenger seat.

Agent Campbell was given consent to search the vehicle where he found packing supplies regularly used for drug packaging, including a vacuum seal machine, vacuum seal bags, and saran wrap. A drug-detecting K-9 also alerted Agent Campbell to $17,400 in Norton's purse. Agent Campbell then found a receipt and confirmation tracking slip for the U.S Priority package Comegys sent from El Paso to Dover in Comegys' luggage. Agent Campbell contacted U.S. Postal Inspectors and provided them with the tracking

---

[*] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C § 3742. While the government notes that this appeal is untimely under Federal Rule of Appellate Procedure 4(b)(1)(A), it does not assert the untimeliness as a grounds for dismissal. See Government of the Virgin Islands v. Martinez, 620 F.3d 321, 327-29 (3d Cir. 2010).

2

number associated with the package. Comegys was released without being informed that the receipt had been found.

On August 14, 2010, U.S. Postal Inspectors obtained and executed a warrant to search the package linked to the tracking slip in Comegys' luggage. The postal inspectors discovered the three kilograms of cocaine. Since the package was mailed on August 11, it was expected to arrive at its destination on August 13 or 14. Beginning on August 13, Kilson and Jeffery Daniels made numerous phones calls to the U.S Postal facility near Dover, Delaware, the main U.S. Postal Service number, as well as to Comegys.

During one call to the U.S. Postal Service on August 14, someone using a phone linked to Kilson entered the first sixteen digits of the cocaine package's tracking number. During another phone call, someone claiming to be Daniels called the Post Office and requested that the package be delivered to 1679 South State Street, Lot 31, Dover, Delaware, 19901, not to 169 State Street as it was currently addressed.

Law enforcement officers subsequently replaced the three kilograms of cocaine in the package with 2.9 kilograms of a substance resembling the drug, while leaving 100 grams of actual cocaine in the package, and devised a plan to make a controlled delivery to the trailer at 1679 South State Street. An undercover officer, with package in tow, knocked on the door at 1679 South State Street and, when he received no response, placed a delivery slip on the door of the trailer. As undercover agents continued their surveillance of the trailer, Kilson arrived alone at the trailer, retrieved the delivery slip from the door, and left in his Mercedes.

Kilson picked up Daniels and they drove together to the U.S Post Office in Dover, Delaware. While Kilson waited in the Mercedes, Daniels left the car and met an unidentified woman. The woman went into the post office, returned with some mail she handed to Daniels, and Kilson and Daniels drove off and returned to 1679 South State Street.

An undercover officer later returned to 1679 South State Street to deliver the package. The undercover officer knocked on the door and Kilson and Daniels answered the door together. Kilson retrieved the delivery slip and handed it to the undercover officer. Daniels signed for the package and took it into the trailer. Almost immediately, Daniels left the house and placed the package in the back seat of Kilson's Mercedes parked in front of the trailer, and returned inside. Shortly thereafter, Kilson left the trailer and sat in the driver's seat of his Mercedes.

As agents wearing vests marked "police" began to converge on Kilson and Daniels, Kilson drove away. He began driving at a normal rate of speed, but he attempted to flee when law enforcement officers converged on his car. Kilson slammed his Mercedes into a police vehicle that blocked his forward progress. As agents wearing clothing marked "police" and "DEA" ran toward Kilson's Mercedes, he put his car in reverse and crashed into another police vehicle. Kilson subsequently was arrested and police confiscated a cell phone that they later linked to many of the calls to the U.S. Postal Service and Comegys. Daniels was arrested nearby after fleeing on foot.

Agents later executed a search warrant on the trailer at 1679 South State Street. During the search, agents found approximately 78 grams of crack cocaine in the freezer.

On the kitchen counter was a small baggie containing crack cocaine, a box of baking soda, an electric hot plate with cocaine residue, and a digital scale. Agents also found another cell phone that had been used previously to conduct wire transfers and make calls related to the package. They later linked this additional cell phone to Kilson.

Post-arrest, Kilson's jail house phone calls were recorded. On those, he described how law enforcement discovered the mailing and its contents. He also discussed an arrest in Nashville that led the police to the postal receipt for the package, said that the person arrested had failed to tip Kilson off that the plan had been compromised, and concluded that the person arrested had "told on [him]." Kilson also revealed that he was working on Daniels not to "break on me" or "crack," but said he felt that it appeared inevitable. Kilson, additionally, was recorded discussing the fact that the police had found 78 grams of crack cocaine in the trailer, but said that it was "lightweight," "nothing," and "they ain't even saying nothing about that." Finally, Kilson also was recorded stating that he had been set-up by Daniels. Kilson proceeded to trial on April 30, 2009.

During Kilson's trial, one of the jurors reported that she heard other jurors making "negative comments" about the defense attorney. At defense counsel's urging, the District Court inquired about the matter *in camera*, without the attorneys present. The District Court spoke with the juror who overheard the comment. She stated that she heard another juror call the defense attorney "an idiot or something like that." The District Court then questioned the juror who was accused of making the comment, but

she denied having done so. The juror also insisted that she had not yet made any determination about the innocence or guilt of Kilson.

The District Court recounted the statements of the jurors to the attorneys. Defense counsel expressed concern about the original juror's apparent error regarding overhearing the comment, noted that there might be "something wrong with her," and moved to strike her from the panel. The District Court denied the motion.

The jury ultimately found Kilson guilty of conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C §§ 841(a)(1), (b)(1)(B), and 846.[†] The District Court sentenced him to the mandatory minimum term of ten years of imprisonment and eight years of supervised release.

The District Court made its sentencing determination on the record and, taking the 210 to 262 month range as a starting point, varied downward to the mandatory minimum. Kilson initially objected to having the 78 grams of crack cocaine found in Daniels' trailer considered during sentencing because he was not convicted of possession. The District Court reasoned, however, that, given Kilson's substantial role in the conspiracy and his connection to the trailer and the overall conspiracy, it was proper to consider it. The Court also considered Kilson's young age and difficult family background. Taking all of this into account, it departed downward and sentenced Kilson to the mandatory minimum of 120 months. Kilson now appeals.

---

[†] Daniels pled guilty to the same charge.

6

## II. DISCUSSION

On April 6, 2012, Kilson's counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738, claiming that there are no non-frivolous grounds for appeal, and asking this Court to allow him to withdraw as counsel. In <u>Anders</u>, the Supreme Court set out the process for an attorney to withdraw from a case in which the indigent criminal defendant he represents wishes to pursue a meritless appeal. If counsel finds an appeal to be "wholly frivolous, after a conscientious examination of it," he should seek permission to withdraw. <u>Id.</u> at 744. "The request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal," the so-called <u>Anders</u> brief. <u>Id.</u> The appellate court must then determine, "after a full examination of all the proceedings," whether counsel's assertion of a meritless appeal is correct. <u>Id.</u> If it is, the court may grant counsel's request to withdraw and dismiss the appeal. <u>Id.</u>

The Third Circuit has embraced the Supreme Court's guidelines in its local appellate rules:

> Where, upon review of the district court record, counsel is persuaded that the appeal presents no issue of even arguable merit, counsel may file a motion to withdraw and supporting brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), which must be served upon the appellant and the United States. The United States must file a brief in response. Appellant may also file a brief in response pro se. After all briefs have been filed, the clerk will refer the case to a merits panel. If the panel agrees that the appeal is without merit, it will grant counsel's <u>Anders</u> motion, and dispose of the appeal without appointing new counsel.

3d. Cir. L.A.R. 109.2(a). Our inquiry on this motion is thus "twofold: (1) whether counsel adequately fulfilled the rule's requirements; and (2) whether an independent

7

review of the record presents any nonfrivolous issues." United States v. Youla, 241. F.3d 296, 300 (3d. Cir. 2001).

The first question often turns on the adequacy of counsel's Anders brief. To fulfill the requirements of Local Appellate Rule 109.2(a), the Anders brief must (1) "satisfy the court that counsel has thoroughly examined the record in search of appealable issues," and (2) "explain why the issues are frivolous." Youla, 241 F.3d at 300. While counsel must examine the record conscientiously, he need not raise and refute every possible claim. See id.

To perform our independent review of the record, we must determine whether "the appeal lacks any basis in law or fact." McCoy v. Court of Appeals of Wis., 486 U.S. 429, 438 n.10 (1988)." Whether an issue is frivolous is informed by the standard of review for each potential claim raised. See United States v. Schuh, 289 F.3d 968, 974-76 (7th Cir. 2002). We need not scour the record on our review. "Where the Anders brief initially appears adequate on its face, the proper course 'is for the appellate court to be guided in reviewing the record by the Anders brief itself.'" Youla, 241 F.3d at 301. (citing United States v. Wagner, 103 F.3d 551 (7th Cir.1996)). If the Anders brief is inadequate, we may seek guidance on potential issues for appeal from defendant's pro se brief or other court filings. See id. Regardless of the adequacy of the Anders Brief, we may affirm the District Court without appointing new counsel if the frivolousness of the appeal is patent. See United States v. Coleman, 575 F.3d 316, 321 (3d Cir. 2009).

Kilson's counsel identified three potential issues for appeal in his Anders brief: (1) whether the evidence was sufficient to sustain Kilson's conviction for conspiracy to

8

distribute cocaine; (2) whether the trial court conducted a proper inquiry into allegations of juror misconduct; and (3) whether the sentence imposed was reasonable under the circumstances. Kilson's *pro se* brief focuses exclusively on the first issue—whether there was sufficient evidence to sustain his conviction.‡

Although counsel's <u>Anders</u> brief contained a few glaring spelling and typographical errors, it indicates that he thoroughly reviewed the record and has raised all possible grounds for appeal. Accordingly, we limit our independent review of the record to the portions of the record identified in the <u>Anders</u> brief, supplemented by the arguments in Kilson's *pro se* brief. <u>Youla</u>, 241 F.3d 301.

A.    Sufficiency of Evidence

The first issue defense counsel has identified—the one Kilson raises in his *pro se* brief—is whether the evidence presented is sufficient to support the jury's verdict. While Kilson claims it was not, defense counsel concedes that, viewing the evidence in the light most favorable to the Government, a rational jury could have found Kilson guilty of conspiracy to distribute 500 grams or more of cocaine.

An appellant bears a heavy burden to sustain a claim that there was insufficient evidence to support a jury's verdict. <u>United States v. Coyle</u>, 63 F.3d 1239, 1243 (3d Cir. 1995). We must review the evidence in the light most favorable to the Government, and draw all reasonable inferences in support of the verdict. <u>United States v. Perez</u>, 280 F.3d 318, 342 (3d Cir. 2002).

---

‡ Kilson fashions his brief around "three issues." Kilson really asserts only one appellate issue—that there was insufficient evidence to support his conviction.

"To establish a charge of conspiracy, the Government must show (1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and (3) an agreement to work toward that goal." United States v. Boria, 592 F.3d 476, 481 (3d Cir. 2010). The Government must prove, moreover, that the defendant was aware that the agreement into which he entered "had the specific unlawful purpose charged in the indictment." United States v. Cartwright, 359 F.3d 281, 286-87 (3d Cir. 2004). Thus, in cases charging a conspiracy under 28 U.S.C. § 846, there must be sufficient evidence from which a reasonable jury could infer that the defendant knew that the subject matter of the conspiracy involved drugs, rather than some other form of contraband. Boria, 592 F.3d at 481. In other words, "[o]ne may not be convicted of conspiracy solely for keeping bad company." United States v. Cooper, 567 F.2d 252, 255 (3d Cir. 1977). While each element of the conspiracy must be proven beyond a reasonable doubt, each element may be proven entirely by circumstantial evidence. United States v. Wexler, 838 F.2d 88, 90 (3d Cir. 1988).

Both the Anders brief and Kilson's *pro se* brief identify this Circuit's succession of cases addressing the sufficiency of the evidence in drug conspiracy cases and the requirement that the government present evidence from which the jury could impute knowledge of drugs to the defendant. In his pro se brief, Kilson concedes that there may have been evidence from which to infer that he was involved in an illegal activity, but argues that the Government failed to present specific evidence from which a rational juror could infer that he had knowledge that the object of the conspiracy was drugs. We disagree.

After a thorough independent review of the record, we find that the Government presented ample, albeit circumstantial, evidence that Kilson had knowledge that the conspiracy was about the distribution of drugs. Without recounting the entire record, the jury reasonably may have relied on the following trial evidence in reaching its verdict: (1) Kilson's involvement with the delivery and tracking of the cocaine package via repeated telephone calls to Comegys, Daniels, and the U.S. Post Office; (2) Kilson's visit to the post office with the delivery slip left on Daniels' front door to obtain the package; (3) Kilson's involvement with obtaining the package when the postal agent delivered it to Daniels' trailer; (4) video evidence demonstrating Kilson's behavior when he and Daniels obtained the package; (5) evidence that Daniels placed the package of cocaine in Kilson's Mercedes, which was later confiscated from his car; and (6) Kilson's attempt to flee.

The evidence obtained post-arrest also pointed to knowledge of drug distribution activity. The jury heard evidence that Kilson spent time in Daniels' trailer at 1679 South State Street, that he was observed visiting the trailer alone, and that the package of cocaine was delivered to that address. They also heard that both crack cocaine and paraphernalia used to "cook" crack cocaine were found in plain view in the trailer, that a cell phone linked to Kilson was found in close proximity to those items, and that 78 grams of crack cocaine were in the trailer's freezer. Finally, the jury heard post-arrest recorded phone calls that could be interpreted as admissions of guilt, knowledge of the cocaine in the package, and a leadership role in the operation.

Viewing the totality of the evidence in the light most favorable to the Government, a reasonable jury readily could conclude that Kilson was a key player in the conspiracy

and had full knowledge that the conspiracy involved cocaine. The facts here are distinguishable from those in the cases upon which Kilson and the <u>Anders</u> brief rely; indeed, they are materially so. In the face of the evidence in this record, and given the "heavy burden" an appellant faces when challenging the sufficiency of the evidence supporting a jury verdict, we agree with counsel that it would be frivolous to premise an appeal on these grounds.[§]

## B. Juror Misconduct

The second issue defense counsel identified is the possibility that the District Court did not conduct a proper inquiry into allegations of juror misconduct. The District Court conducted an *in camera* voir dire of the two jurors in question once notified that one juror claimed to have overheard another juror make a disparaging remark about defense counsel. The Court's voir dire of the jurors in question, and determination that no misconduct had occurred, is reviewed for an abuse of discretion. <u>United States v. Vega</u>, 285 F.3d 256, 265-6 (3d Cir. 2002) citing (<u>Government of the Virgin Islands v. Lima</u>, 774 F.2d 1245, 1250 (3d Cir. 1985)). When the District Court has conducted careful and individualized voir dire examinations and determined that no misconduct or prejudice has occurred, this Court will defer to the District Court's evaluations. <u>See, e.g.,</u>

---

[§] Kilson separately contends that there was insufficient evidence to demonstrate that the scope of the conspiracy involved over 500 grams of cocaine because law enforcement had replaced all but 100 grams of the original cocaine with a substitute before delivery of the package. This assertion is also frivolous; the evidence at trial was sufficient to establish that the original quantity of cocaine in the package was over 500 grams. <u>See, e.g. United States v. Whitted</u>, 436 F'Appx. 102, 104-5 (3d Cir. 2011) (holding that in drug conspiracy cases the relevant measure is the quantity of drugs involved in the conspiracy as a whole) (quoting <u>United States v. Phillips</u>, 349 F.3d 138, 141-142 (3d Cir. 2003)).

United States v. Pantone, 609 F.2d 675, 679 (3d Cir. 1979); United States v. Clapps, 732 F.2d 1148, 1152 (3d Cir. 1984); United States v. Resko, 3 F.3d 684, 690-92 (3d Cir. 1993). The Court conducted the proper examination of the two jurors and determined that no misconduct had occurred. We again agree with counsel that it would have been frivolous to premise an appeal on this ground.

C.    Sentence Imposed

The third issue defense counsel identified is whether the sentence imposed was reasonable under the circumstances. We review a District Court's sentencing decision for procedural and substantive reasonableness under an abuse of discretion standard. See United States v. Maurer, 639 F.3d 72, 77 (3d Cir. 2011). When imposing a sentence, the District Court must follow a three-step procedure: (1) calculate the applicable Guidelines range; (2) formally rule on any departure motions and explain its rulings on such motions; and (3) exercise discretion in applying any relevant factors set forth in 18 U.S.C. § 3553(a).

The District Court's sentence was both procedurally sound and substantively reasonable. The advised range of imprisonment was 210 to 262 months, with a mandatory minimum set at ten years, and a minimum of eight years of supervised release. The District Court varied downward and imposed a sentence below the Guidelines range after taking into account all relevant factors under 18 U.S.C. § 3553(a), including Kilson's personal background. We perceive no abuse of discretion in the District Court's analysis or conclusions. Once more, we agree with counsel that it would have been

13

frivolous to predicate an appeal on complaints regarding the sentence imposed upon Kilson.

## III. CONCLUSION

For the foregoing reasons, we grant counsel's motion to withdraw and, because Kilson's appeal presents no meritorious arguments, we affirm.